LISA D. HARDIE, OSB # 080783
Troutman Sanders LLP
805 SW Broadway, Suite 1560
Portland, OR  97205
Telephone:  (503) 290-2334
Facsimile:  (503) 290-2405
E-mail:  lisa.hardie@troutmansanders.com

MATTHEW D. MURPHEY, CSB #194111 (*admitted pro hac vice*)
Troutman Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614
Telephone:  (949) 622-2756
Facsimile:  (949) 769-2090
E-mail:  matt.murphey@troutmansanders.com

PAUL E. MCGOWAN, GSB #360460 (*admitted pro hac vice*)
Troutman Sanders LLP
600 Peachtree St. NE, Suite 5200
Atlanta, GA  30308
Telephone:  (404) 885-3000
Facsimile:  (404) 962-6842
Email:  paul.mcgowan@troutmansanders.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COLUMBIA SPORTSWEAR NORTH AMERICA, INC.**, an Oregon corporation,<br><br>**PLAINTIFF,**<br><br>v.<br><br>**SEIRUS INNOVATIVE ACCESSORIES, INC.**, a Utah corporation,<br><br>**DEFENDANT.** | No. 3:15-cv-64<br><br>**DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA**<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................3

    A.   Seirus Is Headquartered In The Southern District of California And Has No Meaningful Connection To The District Of Oregon .........................3

    B.   Seirus' Miniscule Amount Of Direct Sales Of The Accused Products Into Oregon Are Insignificant ...............................................................4

    C.   Seirus' Likely Sources Of Proof Are Located In The Southern District Of California ....................................................................................6

III.   PROCEDURAL HISTORY .................................................................................8

IV.   ARGUMENT ....................................................................................................10

    A.   Venue Is Improper In The District Of Oregon, And Plaintiff's Case Must Be Dismissed ...........................................................................10

        1.   Seirus does not "reside" in the District of Oregon ...............................10

            a.   The Court does not have general jurisdiction over Seirus ...........12

            b.   The Court does not have specific jurisdiction over Seirus ...........13

                i.   Purposeful availment ...................................................14

                ii.   Relatedness ................................................................16

                iii.   Reasonableness .........................................................16

        2.   All or nearly all of the facts underlying Plaintiff's claims occurred in the Southern District of California, and Seirus does not have a regular and established place of business in the District of Oregon .......17

    B.   Alternatively, This Case Should Be Transferred To The Southern District Of California Because It Is The More Convenient Forum ..............18

        1.   The private interest factors *strongly* favor transfer to the Southern District of California ...........................................................19

            a.   Accessibility of sources of proof strongly favors transfer ...........19

            b.   The Court should ignore Plaintiff's choice of forum ...................23

            c.   The comparatively low cost of litigating in the Southern District of California favors transfer ...........................................25

            d.   Any judgment obtained by Plaintiff would be more easily enforced in the Southern District of California ...........................26

Page i –   DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4

2.   The public interest factors also *strongly* favor transfer to the Southern District of California ............................................................26

a.   *The Southern District of California has the stronger community interest in this dispute* ...............................................27

b.   *Relative court congestion is neutral* ...........................................28

**V.   CONCLUSION** ........................................................................................29

Page ii –   DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acuity v. Roadtec, Inc.*,
No. 13-cv-6529, 2013 U.S. Dist. LEXIS 175855 (N.D. Ill. Dec. 16, 2013) .......................... 13

*Amazon.com, Inc. v. Cendant Corp.*,
404 F. Supp. 2d 1256 (W.D. Wash. 2005) ........................................................... 19

*Ali v. Carnegie Inst. of Wash.*,
967 F. Supp. 2d 1367, 1392-93 (D. Or. 2013) .................................................... 10

*Amoco Egypt Oil Co. v. Leonis Navigation Com., Inc.*,
1 F.3d 848 (9th Cir. 1993) ................................................................................ 16

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
552 F.3d 1324 (Fed. Cir. 2008) ........................................................................ 14

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ............................................................................ 16

*Bancroft & Masters, Inc. v. Augusta National Inc.*,
223 F.3d 1082 (9th Cir. 2000) .......................................................................... 14

*Beverage Mgmt. Sys. v. Ott*,
Case No. 3:12-cv-2126-SI, 2013 U.S. Dist. LEXIS 42354 (D. Or. March 26, 2013) ........... 14

*BlazeFrame Indus., Ltd. v. California Expanded Metal Prods Co.*,
No. C12-1922, 2013 U.S. Dist. LEXIS 80488 (W.D. Wash. June 6, 2013) ............. 21, 25, 28

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ...................................................................................... 12-15

*Data Disc., Inc. v. Systems Tech. Assoc., Inc.*,
557 F.2d 1280 (9th Cir. 1977) .................................................................... 11, 14

*Data Retrieval Tech., LLC v. Sybase, Inc.*,
No. C08-1702, 2009 U.S. Dist. LEXIS 53737 (W.D. Wash. Apr. 8, 2009) .......................... 21

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ............................................................................ 26

*F.D.I.C v. British v. American Ins. Co., Ltd.*,
828 F.2d 1439 (9th Cir. 1987) .......................................................................... 16

Page iii – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

*Fields v. Sedgwick Assoc. Risks,*
    796 F.2d 299 (9th Cir. 1986) ..........................................................................13

*Gates v. Learjet Corp. v. Jensen,*
    743 F.2d 1325 (9th Cir. 1984) ........................................................................13

*Graziose v. American Home Prods. Corp.,*
    161 F. Supp.2d 1149 (D. Nev. 2001) ..............................................................12

*Greenspun v. Del E. Webb Corp.,*
    634 F.2d 1204 (9th Cir. 1980) ...................................................................11, 14

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947) .......................................27

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements, Ltd.,*
    328 F.3d 1122 (9th Cir. 2003) ........................................................................16

*Hatch v. Reliance Ins. Co.,*
    758 F.2d 409 (9th Cir. 1985) ..........................................................................18

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
    466 U.S. 408 (1984) ...............................................................................11-12, 14

*Hoffman v. Blaski,*
    363 U.S. 335, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960) ..................................18

*Hoover Group, Inc. v. Custom Metalcraft, Inc.,*
    84 F.3d 1408 (Fed. Cir. 1996) ........................................................................11

*In re Cordis Corp.,*
    769 F. 2d 733 (Fed. Cir. 1985) .......................................................................11

*In re Genentech Inc.,*
    566 F.3d 1339 (Fed. Cir. 2009) ................................................. 19-21, 25, 28

*In re Hoffman-La Roche Inc.,*
    587 F.3d 1333 (Fed. Cir. 2009) ......................................................................24

*In re Link_A_Media*
    *Devices Corp.,* 662 F.3d 1221 (Fed. Cir. 2011) .............................................18

*In re Nintendo Co., Ltd.,*
    589 F.3d 1194 (Fed. Cir. 2009) ......................................................21, 23-25, 27

*In re TS Tech,*
    551 F.3d .................................................................................... 19-20, 25, 27

Page iv – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
          IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
          VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

*In re Volkswagen*,
   371 F.3d 201 (5th Cir. 2004) ...........................................................................................27

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .......................................................................... 20, 23, 25, 27

*Int'l Shoe Co. v. Wash.*,
   326 U.S. 310 (1945) .........................................................................................................12

*Iowa State Univ. Research Found. V. Greater Continents, Inc.*,
   81 Fed. Appx. 344 (Fed. Cir. 2003) .................................................................................11

*Johnson v. Bennett Law*,
   No. 3:12-cv-03403, 2014 U.S. Dist. LEXIS 67834 (S.D. Cal. May 14, 2014) .....................10

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) .............................................................................. 19, 21, 26

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) .........................................................................................................15

*King v. Russell*,
   963 F.2d 1301 (9th Cir. 1992) .........................................................................................10

*Lake v. Lake*,
   817 F.2d 1416 (9th Cir. 1987) .........................................................................................16

*Lightspeed Aviation, Inc. v. Bose Corp.*,
   2010 U.S. Dist. LEXIS 106607 (D. Or. Sept. 30, 2010) ................................................ 20, 23

*Locata LBS, LLC v. Yellowpages.com, LLC*,
   2014 U.S. Dist. LEXIS 81050 (C.D. Cal. April 18, 2014) ...................................................19

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) .........................................................................................26

*McCormack v. Medcor, Inc.*,
   Case No. 2:13-cv-02011-JAM(CKD), 2014 U.S. Dist. LEXIS 66502 (N.D. Cal. May
   14, 2014) .........................................................................................................................21

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   Case No. 10-cv-954-HU, 2011 U.S. Dist. LEXIS 57181 (D. Or. April 8, 2011) ...................21

*Microsoft Corp. v. TiVo, Inc.*,
   No. C11-00134, 2011 U.S. Dist. LEXIS, at*10-11 (W.D. Wash. May 19, 2011).......23-25, 27

Page v –  DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
           IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
           VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4

*Murphy v. Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2003) ........................................................................10

*North Am. Philips Corp. v. American Vending Sales, Inc.*,
   35 F.3d 1576 (Fed. Cir. 1994)........................................................................17

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005)......................................................................17

*Pacific Reliant Indus., Inc. v. Amerika Samoa Bank*,
   901 F.2d 735 (9th. Cir. 1990) ........................................................................12

*RecogniCorp, LLC v. Nintendo Co.*,
   Case No. 3:11-cv-1532-ST, 2012 U.S. Dist. LEXIS 143088 (D. Or. Oct. 3, 2012).........21, 26

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998)......................................................................11

*Reebok Int'l Ltd. v. McLaughlin*,
   49 F.3d 1387 (9th Cir. 1995) ......................................................................11-12

*Ricoh Co. v. Honeywell, Inc.*,
   817 F. Supp. 473 (D. N.J. 1993) .......................................................20, 23-24, 28

*Rio Properties, Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) .......................................................................12

*Rocke v. Canadian Automobile Sport Club*,
   660 F.2d 395 (9th Cir. 1981) .........................................................................13

*Roton Barrier, Inc. v. Stanley Works*,
   79 F.3d 1112 (Fed. Cir. 1996)........................................................................24

*Saleh v. Titan Corp.*,
   361 F. Supp. 2d 1152 (S.D. Cal. 2005) ............................................................23

*SD Holdings LLC v. Aircraft Owners and Pilots Ass'n (AOPA), Inc.*,
   Case No. 3:13-cv-1296-AC, 2014 U.S. Dist. LEXIS 100344 (D. Or. April 24, 2014) .....10-13

*Shute v. Carnival Cruise Lines*,
   897 F.2d 377 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991) ........................16

*Sinatra v. National Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) .......................................................................15

*Ticketmaster-New York, Inc. v. Alioto*,
   26 F.3d 201 (1st Cir. 1994)...........................................................................16

Page vi – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4

*Timeline, Inc. v. Proclarity Corp.*,
    No. C05-1013, 2006 U.S. Dist. LEXIS 50056 (W.D. Wash. July 20, 2006) ........................11

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,
    395 F.3d 1275 (Fed. Cir. 2005)........................................................................................11

*Van Cauwenberghe v. Biard*,
    486 U.S. 517, 100 L. Ed. 2d 517, 108 S. Ct. 1945 (1988) ....................................................20

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990)........................................................................................11

*Wilson v. Humphreys (Cayman), Ltd.*,
    916 F.2d 1239 (7th Cir. 1990) ........................................................................................13

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1988) ......................................................14

## STATUTES

28 U.S.C. § 1391 (c)....................................................................................................11, 18

28 U.S.C. § 1400 (b) ...........................................................................................10-11, 17-18

28 U.S.C. § 1404(a) ...................................................................................................passim

Or. R. Civ. P. 4(L)...........................................................................................................12

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(3)........................................................................passim

Federal Rule of Civil Procedure 45(c)(3)(B)(iii) ....................................................................21

Page vii – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
    IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
    VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a), Defendant Seirus Innovative Accessories, Inc. ("Seirus") respectfully moves this Court to dismiss this case for improper venue or, alternatively, transfer the above case to the Southern District of California as a more convenient forum.  In support, Seirus states as follows:

## I.      INTRODUCTION

This case already has a tortured history which began with Plaintiff Columbia Sportswear North America, Inc. ("Plaintiff") improperly filing its lawsuit in the Western District of Washington only to dismiss it rather than face what appeared to be an imminent order transferring the case to the Southern District of California.[1]  Similarly, here, Seirus has no documents, employees, witnesses or facilities in the District of Oregon, and it does not "reside" in this District.  As such, this Court does not have personal jurisdiction over Seirus, and venue is improper in this Court.  Accordingly, Plaintiff's Complaint should be dismissed under Rule 12(b)(3).

Alternatively, the Court should transfer this case because it has insufficient connection to the District of Oregon, and because the Southern District of California is the locus of this dispute and the more convenient forum.  Relevant facts include:

- Seirus is a Utah company headquartered in Poway (San Diego County), California, which is in the Southern District of California.

- All of Seirus' principals, managers, designers/developers of the accused products, and every Seirus employee that conceivably could have knowledge of relevant facts also are located in the Southern District of California.

- Seirus has no employees, witnesses or facilities in the State of Oregon, and it is not registered to do business in this state.

- All of the accused products were designed and developed in the Southern

---

[1]      The Washington district court found that Seirus had made a "strong showing … warranting transfer of venue pursuant to § 1404(a)…."  *See* Declaration of Matthew D. Murphey ("Murphey Decl.") at **Exhibit 1** (copy of January 6, 2015 Order at p. 7 (ECF No. 36) in the Washington Case).

Page 1 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

District of California.  Sales of the accused products directly into the State of Oregon amount to less than a mere $800.00 over the two years they have been available in this state.

- All of Seirus' documents are located in the Southern District of California, including, importantly, any accused product prototypes, design documents, and business records.

- Seirus has been selling other (non-accused) products since 1993 on which the patents-in-suit read.  This relevant and invalidating prior art (*e.g.*, previous Seirus products, catalogs and advertisements) also are located in the Southern District of California.

Thus, all of Seirus' key witnesses and sources of proof (including those not readily stored or transmitted by electronic means) are located within a small radius outside the federal courthouse in San Diego, in the Southern District of California.

The only difference between the instant case and Plaintiff's first misguided filing in Washington is that Defendant is headquartered in Oregon and some of its potential witnesses may also be located in this state.  However, these facts are insufficient to salvage Plaintiff's improper choice of this District as the venue for this litigation.  Further, Plaintiff initially would have filed its lawsuit in this District if Oregon truly were the proper venue to host this case.  It filed in Washington instead.  Plaintiff fails to address this glaring fact other than to claim that it "could not initially substantiate" Seirus' sales in the State of Oregon prior to its rush to file in the State of Washington.  *See* Complaint at ¶9 (ECF No. 1).  Plaintiff fails to say what it did initially to search for allegedly infringing activity in Oregon or why it purportedly could not show Seirus' accused products were sold in Oregon.  In fact, although its sales in Oregon are minor, Seirus has sold its products in Oregon for several years, and it began directly selling the accused products in this state in or about December 2013.  *See* Declaration of Joseph Edwards ("Edwards Decl.")[2] at ¶8.  Yet the Plaintiffs in the Washington Case apparently did not look for such products even

---

[2]    The Edwards Declaration is filed under seal to preserve the confidential and proprietary information that is contained in that Declaration.  There is no protective order issued in this case, and Seirus has filed, contemporaneously with this Motion, a Motion to Seal the Edwards Declaration.

Page 2 –  DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

after amending their Complaint on April 2, 2014 (*see* ECF No. 10 in the Washington Case), nor did they apparently conduct any further investigation into Seirus' Oregon sales while Seirus' motion to dismiss/transfer and Plaintiffs' motion for discovery were pending in that court.

Plaintiff's decision to file in this Court is designed solely and in bad faith to make the parties' dispute more expensive and burdensome for Seirus. As discussed below, if this action is not dismissed, the Court should transfer it to the Southern District of California.

## II.    STATEMENT OF FACTS

### A.    Seirus Is Headquartered In The Southern District of California And Has No Meaningful Connection To The District Of Oregon

Since 1984, Seirus has been an innovator in the cold weather gear industry, offering many different popular products for protection from the elements such as gloves, glove liners, masks, head coverings, among others. *See* Edwards Decl. at ¶2. Seirus' products are widely used by skiers, snowboarders, hunters, fishermen and other outdoor enthusiasts. *Id.* Seirus sells its products to retailers in almost all 50 states in the United States, including retailers with locations in the State of Oregon. *Id.* at ¶8. It also sells to some international retailers. *Id.*

Seirus is a Utah corporation with its principal place of business in Poway, California. *Id.* at ¶3; *see also* ECF 1 (Plaintiff's Complaint) at ¶5. Poway is located in San Diego County, California, and is within the Southern District of California. *Id.* Seirus' headquarters are located approximately twenty-two (22) miles from the federal courthouse in the city of San Diego, California. Decl. at **Exhibit 2**. By car, Seirus' headquarters are located approximately one-thousand and eighty-one (1,081) miles from the federal courthouse in Portland, Oregon. *Id.* at **Exhibit 3**. By plane, San Diego's airport is nine hundred and thirty-three (933) miles from the Portland International Airport. *Id.* at **Exhibit 4**.

According to its Complaint, Plaintiff is located in Portland, Oregon. *See* Complaint at ¶4. Plaintiff's Complaint does not allege that it has any manufacturing or distribution facilities in the

Page 3 –  DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

State of Oregon.  On information and belief, Plaintiff's principal offices are at 14375 N.W.

Science Park Drive in Portland.  By car, Plaintiff's headquarters are located approximately one-

thousand and eighty four (1,084) miles from the federal courthouse in San Diego, California.

Murphey Decl. at **Exhibit 5**.  The flight distance from Portland to San Diego would be the same

in the reverse direction (933 miles), *id*. at **Exhibit 4**, and the distance by car from Plaintiff's

offices to the courthouse in Portland would be about eight (8) miles.  *Id*. at **Exhibit 6**.

B.    **Seirus' Miniscule Amount Of Direct Sales Of The Accused Products Into Oregon Are Insignificant**

Among the retailers to which Seirus sells its products are "big box" retailers such as

Dick's Sporting Goods, The Sports Authority, REI and others, some of which have retail outlets

in Oregon.  *See* Edwards Decl. at ¶9.  Seirus also sells to various non-big box specialty shops in

Oregon such as ski shops and hunting stores.  *Id*. at ¶8.  With regard to the non-big box stores,

Seirus ships orders directly to them.  *Id*.  Seirus first shipped an accused HeatWave product

directly to an Oregon specialty store on or about December 20, 2013.  *Id*.  Seirus' ***total sales*** of

the accused products to the specialty stores in Oregon are ***less than $800.00***.  *Id*.  Specifically,

Seirus sold a total of $255.00 of the accused products into Oregon from March 1, 2013 through

February 28, 2014, and $543.00 of accused products from March 1, 2014 through the present.[3]

*Id*.  Thus, the total amount of sales of the accused products sold directly into Oregon is $798.00.

This is a mere 0.0014% of Seirus' total sales from March 1, 2013 to the present.  *Id*.

Further, Seirus' sales of all products directly into Oregon (including accused and non-

accused products) is similarly limited.  For the past 5 years, the percentage of direct Oregon sales

of all products ranges between 0.24% and 0.65% of Seirus' total worldwide sales.  *Id*. at ¶8.  In

other words, Seirus' total direct sales into Oregon represents an average of a mere 0.4% of

Seirus' total sales.  *Id*.

---

[3]    Seirus' seasonal year is from March 1 through the end of February for each year.  Edwards Decl. at¶ 8.

Page 4 –  DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4

With regard to sales to the national big box retailers, however, Seirus sells its products pursuant to bulk orders from the retailers, and then ships the products to the retailers' own distribution centers. *Id.* at ¶9. In other words, Seirus does not sell or ship its products directly to those retailers' individual stores in a given state. *Id.* Thus, none of the sales to such retailers are targeted specifically to Oregon or any other state. *Id.* None of the distribution centers to which Seirus ships its products are located in Oregon. *Id.* Each distribution center typically services a number of states, and the retailers then send the products from their distribution centers to their own retail stores in the states serviced by the distribution centers. *Id.* Seirus has no control over whether or how much of any given product is (or is not) shipped from a retailer's distribution center into any given city or state. *Id.* Thus, while some of Seirus' products sold to the big box retailers may end up in stores in the State of Oregon, Seirus does not know – and cannot determine – the number of units actually shipped to or sold in any given state. *Id.*

For example, on information and belief, there are two Dick's Sporting Goods distribution centers that service the State of Oregon; one distribution center is located outside of Phoenix in Goodyear, Arizona, and the other is located outside of Indianapolis in Plainfield, Indiana. *Id.* On information and belief, there are ten (10) Dick's Sporting Goods stores in the State of Oregon, and nine (9) of them are serviced by the distribution center in Arizona, and one (1) is serviced by the center located in Indiana. [4] *Id.* However, Seirus has no way of knowing the amount of any products (or even which products) that were sent to and sold in any Dick's Sporting Goods stores in Oregon (or any other state). *Id.* The same is true for any other big box retailer. *Id.*

---

[4] The amount of sales of Seirus' accused HeatWave products to both of those distribution centers is confidential and includes proprietary and sensitive sales information that is included in the declaration of Joseph Edwards, which is filed under seal. *See* Edwards Decl. at ¶9. Similarly, to the extent the specifics relating to the Dick's Sporting Goods distribution centers are considered confidential or proprietary by Dick's, such information also is not include here but is included in the Edwards Declaration. *Id.*

Page 5 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

Although Seirus does not know how many or which products ultimately were sent to or sold in Oregon by the big box retailers, it can only reasonably estimate (not based on actual knowledge of the retailers' distribution patterns, but solely on a mathematical apportionment) the products sold to those big box retailers that conceivably could have entered Oregon for sale. *Id.* at ¶¶9-11. Based on those estimates, the potential number of products that might have entered Oregon are quite small. *Id.*

Moreover, Seirus sponsors no "kiosks" (a term which Plaintiff does not define) at any retailers as Plaintiff's Complaint suggests. *Id.* at ¶12 (referencing Complaint at ¶¶7, 12). To the extent any such "kiosks" exist at any retailer's location, they would be retailer-promoted and sponsored and maintained without Seirus' participation. *Id.* Nor does Seirus offer the accused products for sale via any direct mailing or communication with potential customers in Oregon as Columbia's Complaint suggests. *Id.* (referencing Complaint at ¶12). While Seirus advertises, for example, through in-store displays and some nationally-circulated magazines, it does not advertise by mailing or circulating flyers or promotional materials directly to potential customers in Oregon (or any other state). *Id.*

C.    **Seirus' Likely Sources Of Proof Are Located In The Southern District Of California**

All of Seirus' potential party witnesses (*i.e.*, its principals, business managers, designers and other employees) are located in the Southern District of California. Seirus currently employs approximately 59 individuals, and all of them work at Seirus' corporate headquarters in Poway. Edwards Decl. at ¶4. Seirus does not – and has never – had any employees, documents, operations or facilities in the State of Oregon. *Id.* Seirus also is not registered to do business in Oregon, and it does not have sales agents, bank accounts or telephone listings in this state.[5] *Id.*

---

[5]    Seirus uses sales/customer service representatives to handle substantially all of Seirus' sales. All of those sales/customer service representatives are Seirus employees and are located at Seirus' headquarters in Poway, California. *See* Edwards Decl. at ¶13. Seirus also uses two independent contractors – one for its Snow Sports division, and one for its Hunting/Workwear/Safety division – to facilitate some of its relationships with retailers that sell its products throughout the country, including in Oregon. *Id.* These independent contractors are

Page 6 –    DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
              IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
              VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

The quantum of evidence potentially relevant to this case resides almost exclusively in the Southern District of California. Specifically, all of Seirus' business records, product designs and designers, product prototypes and templates, computer hard drives, relevant prior art and all other potentially-relevant documents are all centrally maintained at its Poway, California headquarters. *Id.* at ¶¶4-6, 16. Among other documents, those maintained at Seirus' headquarters include documents relevant to its business strategy and the design, development, manufacture, advertising, and sale of the accused products. *Id.* Notably, Seirus' total sales of the accused products directly into Oregon are less than $800.00 for the two years they have been available here. *Id.* at ¶8. Further, any prototypes or early designs of the accused products (to the extent such evidence still exists) also would be found exclusively at its Poway headquarters. *Id.* at ¶6. Additionally, Seirus' decision-makers on all business matters work in Poway. *Id.* at ¶¶4-6, 16; *see also* Declaration of Michael Carey ("M. Carey Decl.") at ¶¶2-5 and Declaration of Wendy Carey ("W. Carey Decl.") at ¶¶2-4. The only evidence that might conceivably reside outside of the Southern District of California is some of Plaintiff's potential pool of witnesses which, as alleged in the Complaint, reside in either Oregon or Utah. *See* Complaint at ¶14.

Further, two of the patents-in-suit (U.S. Patent Nos. 8,424,119 and 8,453,270, the "'119 patent" and "'270 patent", respectively) read directly on at least one of Seirus' ThermaLux line of glove products (the ThermaLux products are not accused in this case). The ThermaLux products predate the asserted patents by approximately fifteen years. For purposes of prior art analyses, the critical date of the '119 and '270 patents is May 7, 2008. *See* Murphey Decl. at **Exhibits** 7 and **8** ('119 and '270 patents, respectively). Seirus has been advertising and selling its ThermaLux gloves since 1993. Edwards Decl. at ¶15. Seirus did much of this advertising in

---

not Seirus employees, and they assist Seirus in various states, including in Oregon, by facilitating sales through Seirus' sales/customer service department in Poway, California. *Id.* Neither of these independent contractors resides in the State of Oregon. *Id.* These independent contractors represent multiple other companies and are not exclusive to Seirus. *Id.* This is a common arrangement in this industry. *Id.*

Page 7 –   DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

its yearly catalogs beginning in or about 1993 (*id.*), which, along with the actual products, will be shown to be relevant (and invalidating) prior art in this case. Relatedly, the developers of the ThermaLux prior art product, in addition to the accused products, were Seirus' co-Presidents Joseph Edwards and Michael Carey, both of whom are residents of San Diego and work at Seirus' headquarters in Poway, California. *Id.*; *see also* M. Carey Decl. at ¶¶2, 6.

Seirus has already located some prior catalogs advertising the ThermaLux line of products, and all such documents and things are stored and maintained at Seirus' Poway corporate headquarters. Edwards Decl. at ¶16. However, none of Seirus' catalogs or advertisements – and, indeed, few of its documents pre-dating 2003 – are in electronic form. Thus, to the extent any such documents exist, they exist only in hard copy form and are also stored in a warehouse located at Seirus' Poway headquarters. *Id.*

## III.    PROCEDURAL HISTORY

Plaintiff initially filed this lawsuit in the Seattle Division of the Western District of Washington on or about December 4, 2013.[6] For purposes of the instant Motion, that case will be referred to as the "Washington Case." As with the instant filing in this Court, Seirus had no substantial connection to the State of Washington, because, as just explained, all of its employees and documents are still located in the Southern District of California. Seirus filed a motion to dismiss or, alternatively, to transfer venue in the Washington Case. *See* Complaint at ¶9; *see also* ECF No. 20 in the Washington Case. Plaintiff (and its co-Plaintiffs in the Washington Case) then filed a motion to stay the briefing on Seirus' motion and sought leave to conduct jurisdictional discovery. Complaint at ¶11. The Hon. Ricardo Martinez, to whom the

---

[6]    *Columbia Sportswear Co., et al. v. Seirus Innovative Accessories, Inc.*, Cause No. 2:13-cv-2175-RSM in the Western District of Washington. The Washington Case also had two other plaintiffs that, inexplicably, are not parties to the instant action: Columbia Sportswear Company (the parent company of Plaintiff in the instant action (*see* Complaint at ¶4)), and Columbia Sportswear USA Corporation.

Page 8 –    DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

Washington Case was assigned, denied the request for discovery stating, among other things, that "[t]he strong showing the Defendant has made warranting transfer of venue pursuant to §1404(a) further obviates the need for jurisdictional discovery." *See* Murphey Decl. at **Exhibit 1** (copy of January 6, 2015 Order at p. 7 (ECF No. 36) in the Washington Case). Plaintiff (and the other plaintiffs in the Washington Case) dismissed that action before Judge Martinez issued an opinion dismissing the action or transferring it to the Southern District of California.

Plaintiff's initial filing of its lawsuit in Washington was a colossal and needless waste of judicial and party resources. Judge Martinez's January 6, 2015 Order bears that out. Here, Plaintiff addresses its misguided filing of the Washington Case by including seven paragraphs in its Complaint attempting to explain the rationale, or lack thereof, for its choice of venue in that case. *See* Complaint at ¶¶9-15. Instead of explaining why it did not first file in the Southern District of California, however, Plaintiff devotes those seven paragraphs to arguing that it "could not initially substantiate" its belief that Seirus sold the accused products in Oregon when it filed the Washington Case in December of 2013. Complaint at ¶9. Plaintiff also claims that, while its motion for discovery was pending in the Washington Case, it "obtained, for the first time, evidence that Seirus was actively infringing its patents in the District of Oregon…." *Id.* at ¶12.

Plaintiff fails, however, to describe what steps, if any, it actually took to identify any sales of the accused products in the State of Oregon before it filed its lawsuit in Washington. Plaintiff does not say whether they visited a sporting goods store or even looked at all for such sales in the State of Oregon. But Seirus has sold the accused products in the State of Oregon since at least December 20, 2013, although those sales account for only a minute portion of Seirus' total sales. *See* Edwards Decl. at ¶8. Further, the accused products may have been available at Dick's Sporting Goods or other big box retailers in Oregon before that time. But Plaintiffs apparently refused to look for such sales even while they amended their Complaint on April 2, 2014 or while the parties' various motions were pending in the Washington Case.

Page 9 –  DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
          IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
          VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

All of this confirms that Plaintiff's initial filing in Washington, its subsequent dismissal of that lawsuit because Judge Martinez plainly was going to transfer it to San Diego, and its filing in this Court have been in bad faith. These facts highlight that Plaintiff's tactics are designed to make this lawsuit as expensive and burdensome as possible for Seirus to defend. This is not an insignificant consideration given the vast disparity of financial resources between the parties in this case (as discussed below). At bottom, this case is more properly venued in the Southern District of California, which is the locus of this dispute and is where the vast majority of evidence is located.

## IV.    ARGUMENT

### A.    Venue Is Improper In The District Of Oregon, And Plaintiff's Case Must Be Dismissed.

In patent cases, venue is controlled by 28 U.S.C. § 1400 (b), which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." In considering a motion to dismiss for improper venue under Rule 12(b)(3), "the Court does not have to accept pleadings as true and may consider facts outside of the pleadings." *Johnson v. Bennett Law,* No. 3:12-cv-03403, 2014 U.S. Dist. LEXIS 67834, at *4 (S.D. Cal. May 14, 2014) (citing *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1137 (9th Cir. 2003)). Upon a finding of improper venue, the district court can, in its discretion, either dismiss the case or transfer it in the interests of justice. *Id.* at *5; *see also King v. Russell,* 963 F.2d 1301, 1304 (9th Cir. 1992) and *Ali v. Carnegie Inst. of Wash.*, 967 F. Supp. 2d 1367, 1392-93 (D. Or. 2013).

"Federal Circuit law governs the question of whether a district court has personal jurisdiction over a defendant in a patent suit." *SD Holdings LLC v. Aircraft Owners and Pilots Ass'n (AOPA), Inc.*, Case No. 3:13-cv-1296-AC, 2014 U.S. Dist. LEXIS 100344, at *6 (D. Or.

Page 10 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
          IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
          VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

April 24, 2014) (citing *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355, 1358 (Fed. Cir. 1998)).  The Federal Circuit has stated that Section 1400 (b) is "not to be liberally construed," and infringement claims against a corporation must be read in conjunction with 28 U.S.C. § 1391 (c).  *See Timeline, Inc. v. Proclarity Corp.,* No. C05-1013, 2006 U.S. Dist. LEXIS 50056, at *15 (W.D. Wash. July 20, 2006) (citing *In re Cordis Corp.,* 769 F. 2d 733, 736 (Fed. Cir. 1985);  *Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1410 (Fed. Cir. 1996)).  Section 1391 (c) provides that, for venue purposes, a corporation shall be deemed to "reside" in a judicial district if it is subject to personal jurisdiction there.  *Id.*

      1.    <u>Seirus does not "reside" in the District of Oregon.</u>

The first venue basis under Section 1400(b) is satisfied only if Seirus is deemed to "reside" (*i.e.*, is subject to personal jurisdiction) in the District of Oregon.  *See VE Holding Corp. v. Johnson Gas Appliance Co*., 917 F.2d 1574, 1583 (Fed. Cir. 1990).  Here, for at least the reasons stated above, this Court has no personal jurisdiction over Seirus, and Seirus cannot be said to reside in this District.  Specifically, courts use a two-step test to determine the propriety of asserting personal jurisdiction over an out-of-state defendant.  *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc*., 395 F.3d 1275, 1279 (Fed. Cir. 2005) and *Greenspun v. Del E. Webb Corp*., 634 F.2d 1204, 1207 (9th Cir. 1980).  First, the relevant state long-arm statute must permit jurisdiction.  *Id.*  Second, the exercise of jurisdiction must not violate the demands of due process.  *Id.*  The party seeking to invoke the jurisdiction of the federal court bears the burden of establishing that such jurisdiction exists.  *Iowa State Univ. Research Found. V. Greater Continents, Inc*., 81 Fed. Appx. 344, 349 (Fed. Cir. 2003) and *Data Disc., Inc. v. Systems Tech. Assoc., Inc*., 557 F.2d 1280, 1285 (9th Cir. 1977).  Here, Plaintiff cannot meet this heavy burden.

A court may have general or specific jurisdiction over a nonresident defendant.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984);  *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995).  Oregon's long-arm statute permits a

Page 11 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

court to exercise jurisdiction over any party so long as prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." Or. R. Civ. P. 4(L).  Therefore, Oregon's long-arm statute is coextensive with the limits of federal due process.  *SD Holdings*, 2014 U.S. Dist. LEXIS 100344 at *7 (citing *Pacific Reliant Indus., Inc. v. Amerika Samoa Bank*, 901 F.2d 735, 737 (9th. Cir. 1990)).

To exercise personal jurisdiction over a nonresident defendant consistent with due process, the defendant must have certain minimum contacts with the forum, such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash*., 326 U.S. 310, 316 (1945).  Because Oregon's long-arm statute reaches to the full limits of due process, this Court need only decide whether the exercise of personal jurisdiction will comport with constitutional requirements.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002).  The minimum contacts analysis requires a court to determine whether the nonresident has purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also SD Holdings*, 2014 U.S. Dist. LEXIS 100344, at *7-8 ("[t]he fundamental issue is whether a defendant, through his conduct and connection with the forum state, purposefully availed itself of the privilege of conducting activities within the forum state to such degree that it invokes the benefits and protections of the laws and should reasonably anticipate being haled into court there." (citations omitted)).

a.    *The Court does not have general jurisdiction over Seirus.*

A court may exercise general jurisdiction over a nonresident only if the defendant's purposeful contacts with the forum state are "continuous and systematic."  *Helicopteros*, 466 U.S. at 414-16.  General jurisdiction analyses are not claim specific; rather, it is the defendant's activities in the forum in general that are evaluated.  *Graziose v. American Home Prods. Corp*., 161 F. Supp.2d 1149, 1152 (D. Nev. 2001).  The plaintiff must also show that the defendant has

Page 12 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4

substantial contacts with the forum state. *Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Continuous and systematic is a "fairly high standard in practice," *Fields v. Sedgwick Assoc. Risks*, 796 F.2d 299, 301 (9th Cir. 1986), and the Ninth Circuit has been reluctant to assert general jurisdiction over nonresident defendants in most cases. *See, e.g., Rocke v. Canadian Automobile Sport Club*, 660 F.2d 395 (9th Cir. 1981). A significant fact in the general jurisdiction analysis is whether the defendant has established a "regular place of business" in the forum state. *Rocke*, 660 F.2d at 399.

Based on the facts set forth above, Seirus does not continuously and systematically transact business in the State of Oregon for purposes of a general jurisdiction analysis. *See generally*, Edwards Decl. at ¶¶4-6, 8-11. Seirus has no regular or established place of business in Oregon, it has no manufacturing or design facilities here, it has no documents here, it has no registered agents here, it has no bank accounts here, it is not registered to do business in this state[7], and it has no employees here. *Id.* It also does relatively little business in this State. *Id.* at ¶¶8-11.

Thus, exercise of general personal jurisdiction by this Court thus would be improper.

b.    *The Court does not have specific jurisdiction over Seirus.*

If a non-resident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, a defendant may still be subject to the specific jurisdiction of the forum if it has "purposefully directed his activities at residents of the forum state and the claims asserted in the litigation arise out of or are connected to the defendant's forum-related activities." *SD Holdings*, 2014 U.S. Dist. LEXIS 100344, at *9 (citing *Burger*

---

[7]    Seirus is not registered to do business in Oregon, and it merely has a tax registration with the State of Oregon (as it does with every state into which it sells) to account for any taxes collected due to its sales. Moreover, even registration to do business within a state "does not automatically confer general personal jurisdiction." *Acuity v. Roadtec, Inc.*, No. 13-cv-6529, 2013 U.S. Dist. LEXIS 175855, at *17-18 (N.D. Ill. Dec. 16, 2013) (citing *Wilson v. Humphreys (Cayman), Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990)).

Page 13 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

*King*, 471 U.S. at 472-73 and *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008)); *see also Helicopteros*, 466 U.S. at 414 (controversy must be "related to or 'arise[] out of' a defendant's contacts with the forum."). The Supreme Court has "rejected the application of 'mechanical' tests to determine personal jurisdiction," *Beverage Mgmt. Sys. v. Ott*, Case No. 3:12-cv-2126-SI, 2013 U.S. Dist. LEXIS 42354, *7 (D. Or. March 26, 2013), and instead focuses its analysis on the "quality and nature of the defendant's contacts with the forum state in relation to the cause of action." *Data Disc*, 557 F.2d 1287. A state may exercise specific jurisdiction over a non-resident who purposefully avails himself of forum benefits because the state "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors" and it may be unfair to allow such actors to "escape having to account in other States for consequences that arise proximately from such activities." *Burger King*, 471 U.S. at 473-74.

For this analysis, the Ninth Circuit has set forth a three-pronged test, each of which must be satisfied: (1) the defendant must perform some act or consummate some transaction within the forum or otherwise purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Greenspun*, 634 F.2d at 1207; *see also Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082 (9th Cir. 2000).

       i.    *Purposeful availment.*

Purposeful availment requires that a party establish minimum contacts in the forum state such that they may reasonably anticipate that the contact could lead to suit in that state. When such "clear notice" of a potential suit does not exist, personal jurisdiction is inappropriate. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 100 S. Ct. 559, 567 (1988). The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's "random, isolated, or fortuitous" contacts with the forum

Page 14 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
          IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
          VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

state, nor upon the unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 475; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). The court must find that a defendant performed some type of affirmative conduct that allows or promotes the transaction of business in the forum state. *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988).

As an initial matter, Seirus' print advertising is not "specifically directed" at Oregon; rather, Seirus' advertising includes magazine ads and in-store displays and is a national endeavor that does not speak specifically to the residents of any one state. Edwards Decl. at ¶12. Further, Seirus does not have a local Oregon-based sales force. *Id.* at ¶¶4, 13. With less than a mere $800.00 of sales of the accused products directly into the State of Oregon (*see* Edwards Decl. at ¶8), Seirus has not sufficiently availed itself of this forum for purposes of specific jurisdiction. This is true even considering any additional products that might have been sold in Oregon through any of the big box retailers to which Seirus sells its goods. *Id.* at ¶¶9-11.

Additionally, even considering all of Seirus' sales directly into Oregon of both the accused and all non-accused products (which never approached even a mere 1% of Seirus' total sales for any relevant time period), Seirus' footprint in Oregon remains too insignificant to confer jurisdiction. Specifically, for the March 1, 2010 to February 28, 2011 period, Seirus' total sales of all products directly into Oregon were a mere 0.24% of its total worldwide sales. Edwards Decl. at ¶8. For the March 1, 2011 to February 28, 2012 period, the same sales were 0.48% of total sales, for the March 1, 2012 to February 28, 2013 period, the sales were 0.65% of total sales, for the March 1, 2013 to February 28, 2014 period, the sales were 0.35% of total sales, and for the March 1, 2014 to February 15, 2015 period, the sales were 0.32% of total sales. *Id.* The average for the past five years is thus about 0.4% of Seirus' total sales. *Id.*

Thus, given the minor amount of sales of the all of Seirus' products directly into this state (and especially the accused products), any such contacts with Oregon necessarily are too random, fortuitous, and attenuated to support a finding of specific jurisdiction over Seirus.

Page 15 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

ii.    *Relatedness.*

The requirement that a suit arise out of, or be related to, the defendant's in-forum activities focuses on the nexus between the defendant's contacts and the plaintiff's cause of action. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994). The Ninth Circuit follows the "but-for" approach in determining whether a cause of action arises from or relates to a defendant's forum contacts. *See Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991). A cause of action arises from or relates to a defendant's forum contacts when, but for those contacts, the cause of action would never have arisen. *Id.*; *see also Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Seirus' direct sale of less than $800.00 worth of accused products in the State of Oregon, coupled with the lack of other connection to this state, cannot support a "but for" analysis and is simply insufficient to support a cause of action in this District.

iii.    *Reasonableness.*

Even if the defendant's contacts could render it subject to the forum's jurisdiction, the assertion of general or specific jurisdiction still must be reasonable. *Amoco Egypt Oil Co. v. Leonis Navigation Com., Inc*., 1 F.3d 848, 851 (9th Cir. 1993). In determining reasonableness, the court must consider the: (1) burden on the defendant; (2) existence of an alternative forum; (3) convenience and effectiveness of relief for the plaintiff; (4) interest of the forum state; (5) efficiency of adjudication; (6) extent of defendant's purposeful interjection into the forum; and (7) possibility of conflict with other sovereignty. *Lake v. Lake*, 817 F.2d 1416, 1421-22 (9th Cir. 1987). No factor is dispositive in itself, and the court must balance all seven factors. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements, Ltd*., 328 F.3d 1122, 1132 (9th Cir. 2003).

It would place an impermissible burden upon Seirus to have to defend this action in Oregon, especially in view of the small number of sales of the accused products directly into this District. *F.D.I.C v. British v. American Ins. Co., Ltd*., 828 F.2d 1439, 1444 (9th Cir. 1987) (holding that the law of personal jurisdiction has been characterized as "asymmetrical"; *i.e.*, "the

Page 16 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

primary concern is for the defendant's burden").  Seirus sales of the accused products are slight

at best, *see* Edwards Decl. at ¶¶9-11, yet the parties' combined cost of litigating this matter

through trial will almost certainly be at least several million dollars.  This likely will far exceed

any recovery Plaintiff might obtain even under the most optimistic of reasonable royalty rates.

Further, there plainly is an alternative forum (the Southern District of California, where

Plaintiff should have filed in the first place).  Moreover, the State of Oregon has less interest in

resolving the present dispute, especially when compared with the overriding interest held by the

citizenry in the locus of this dispute (the Southern District of California).  Additionally, there are

no issues of efficiency of adjudication or potential conflicts with other sovereignties.  For these

reasons, and those set forth below relating to transfer, it would be unreasonable under these facts

to proceed in this forum.

      2.    <u>All or nearly all of the facts underlying Plaintiff's claims occurred in the Southern District of California, and Seirus does not have a regular and established place of business in the District of Oregon.</u>

The second basis for venue under Section 1400 (b) has two components:  venue may lie

"…where the defendant has committed acts of infringement and has a regular and established

place of business."  Regarding alleged acts of infringement, the Federal Circuit has stated that

alleged patent infringement occurs where the allegedly infringing process is carried out.  *NTP,

Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) and *North Am. Philips

Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1578-79 (Fed. Cir. 1994).  Here, there is

no dispute that the accused products were designed and sold from the Southern District of

California, and all decisions about them also were made in that District.  Edwards Decl. at ¶6.

Thus, because virtually all of the events or omissions giving rise to Plaintiff's allegations of

infringement occurred outside of Oregon (*i.e.*, in the Southern District of California), the first

prong for the second basis for venue under § 1400(b) also is lacking.  Seirus also has no regular

and established place of business in Oregon such that the second prong of the second basis for

Page 17 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4

venue cannot be met.

Accordingly, venue in this forum is improper, and the Court should dismiss Plaintiff's

Complaint.

**B.    Alternatively, This Case Should Be Transferred To The Southern District Of California Because It Is The More Convenient Forum.**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." The burden is on Seirus to establish that transfer is proper.

In any motion to transfer, the court must address the threshold question of whether this action

could have been brought in the transferee district. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414

(9th Cir. 1985). Although Plaintiff's claims sound in patent law, the Federal Circuit applies

regional circuit law when determining a motion to transfer. *In re Link_A_Media Devices Corp.*,

662 F.3d 1221, 1223 (Fed. Cir. 2011).

There is no question that this case could readily have been filed in the Southern District

of California, where Seirus' headquarters are located. *See* 28 U.S.C. § 1400(b) (patent lawsuit

may be brought where defendant resides or sold accused product), *and see* 28 U.S.C. § 1391(c)

(venue proper where defendant subject to jurisdiction). Moreover, the State of California equally

has personal jurisdiction over Plaintiff. On information and belief, Plaintiff and/or its parent

company (Columbia Sportswear Co.) sells its products through approximately thirty (30)

retailers in the Southern District of California, maintains multiple Columbia-branded outlets

within the State of California, and maintains a manufacturing liaison office in Richmond,

California. *See* Murphey Decl. at **Exhibit 9** (webpages from Plaintiff's website showing some

outlet and retail store locations) and **Exhibit 10** (2013 Columbia 10-K statement); *see also*

*Hoffman v. Blaski*, 363 U.S. 335, 344, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960) (transferee court

must have jurisdiction over all parties).

Page 18 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
        IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
        VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

1.    The private interest factors *strongly* favor transfer to the Southern District of California.

In determining a motion to transfer venue, the Ninth Circuit considers a number of "private interest" and "public interest" factors. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). District courts have discretion in determining how to apportion weight to the relevant factors. *Id.* In addition, the factors in a Section 1404(a) analysis cannot be "mechanically applied" to all types of cases. *See Locata LBS, LLC v. Yellowpages.com, LLC*, 2014 U.S. Dist. LEXIS 81050, *7 (C.D. Cal. April 18, 2014) and *Amazon.com, Inc. v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005). These factors weigh heavily in favor of the Southern District of California, the forum where Plaintiff should have filed in the first place.

The Ninth Circuit considers the following "private interest" factors in evaluating a transfer motion: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *See Jones*, 211 F.3d at 498-99. The Ninth Circuit also has considered the enforceability of the judgment as a factor. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).

As discussed below, all applicable factors[8] strongly favor transfer in this case.

a.    *Accessibility of sources of proof strongly favors transfer.*

The relative ease of access to sources of proof, which includes access to and the convenience of witnesses, is an "important factor" in the transfer analysis despite technological advances in electronic document storage and transmission. *See In re Genentech Inc.*, 566 F.3d

---

[8]    The first two factors are not relevant: there is no applicable "agreement" between the parties, and all district courts are presumed equally familiar with federal patent laws. *See In re TS Tech*, 551 F.3d at 1319.

Page 19 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

1339, 1343 (Fed. Cir. 2009) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008)); *see also In re TS Tech*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). To examine "the relative ease of access to sources of proof," and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action. *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 483 (D. N.J. 1993) (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 100 L. Ed. 2d 517, 108 S. Ct. 1945 (1988)). Courts have found that ***"[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."*** *Genentech*, 566 F.3d at 1345 (citation omitted) (emphasis added).

Here, as recited above, the relation of the parties and the cause of action to the Southern District of California *strongly* favors transfer to that forum. Information material to this case is concentrated heavily in the Southern District of California. Seirus is headquartered there, and all of its documents (both electronic and hard copy) and all of its party witnesses and other employees are located there. Edwards Decl. at ¶¶4-6, 16. Moreover, the design, development and marketing of the accused products occurred in San Diego, where all of Seirus' strategy and business decisions are made. *Id.* at ¶¶5-6. All documents relating to such activities (including hard-copy items such as physical prototypes, templates, product samples, old catalogues and other prior art, and other things not in electronic form as well as all computer hard drives and other electronic information) likewise are in the Southern District of California. *Id.* at ¶¶4-6, 16. All of these documents are necessary to Seirus' defense in this case and thus are highly relevant.

Seirus also has no offices, employees, agents, accounts, telephone numbers, documents, or facilities in Oregon, and it is not registered to do business in Oregon. *Id.*; *see also Lightspeed Aviation, Inc. v. Bose Corp.*, 2010 U.S. Dist. LEXIS 106607, *9 (D. Or. Sept. 30, 2010) (transfer

Page 20 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

request granted even though defendant had two retail stores located in Oregon). Thus, the Southern District of California is the preferred forum because it is the center of gravity of the accused activity. *Mentor Graphics Corp. v. EVE-USA, Inc.*, Case No. 10-cv-954-HU, 2011 U.S. Dist. LEXIS 57181, *5 (D. Or. April 8, 2011) ("The district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production, 'i.e. where the product was 'developed, tested, researched and produced, and where the marketing and sales decisions occurred.''") (citation omitted).

The District of Oregon also does not provide compulsory process to compel unwilling non-party witnesses to attend trial in Oregon. *See Jones*, 211 F.3d at 498-99; *Genentech*, 566 F.3d at 1345 (no witnesses could be compelled to attend in plaintiff's chosen forum); *BlazeFrame Indus., Ltd. v. California Expanded Metal Prods Co*., No. C12-1922, 2013 U.S. Dist. LEXIS 80488, at *9 (W.D. Wash. June 6, 2013) (plaintiff could not guarantee attendance of non-party witnesses). Here, although the facts and locations of any non-party witnesses have not formally been discovered by the parties, Plaintiff admits that at least one such witness resides in Utah. Complaint at ¶14; *see also RecogniCorp, LLC v. Nintendo Co*., Case No. 3:11-cv-1532-ST, 2012 U.S. Dist. LEXIS 143088, *13-14 (D. Or. Oct. 3, 2012) (granting transfer request where neither party resided in Oregon, *even though out-of-state patent inventor was willing to travel to Oregon for trial*) *and see* Fed. R. Civ. P. 45(c)(3)(B)(iii) (subpoena power extends to non-party witnesses within 100 miles of the courthouse).

Additionally, the convenience of key witnesses is likewise highly important in determining proper venue. Federal courts have stated that "[t]he relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *McCormack v. Medcor, Inc*., Case No. 2:13-cv-02011-JAM(CKD), 2014 U.S. Dist. LEXIS 66502, *6 (N.D. Cal. May 14, 2014); *see also Data Retrieval Tech., LLC v. Sybase, Inc*., No. C08-1702, 2009 U.S. Dist. LEXIS 53737, at *11 (W.D. Wash. Apr. 8, 2009) (same).

Page 21 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

Among Seirus' key witnesses are its Co-Presidents Joseph Edwards and Michael Carey, and its Chief Financial Officer Wendy Carey, and its other employees who design or contribute to the design and manufacturing specifications of the accused HeatWave products as well as other products that incorporate Seirus' accused technology.  Edwards Decl. at ¶¶14-15; *see also generally*, M. Carey Decl. and W. Carey Decl.

Mr. Edwards has an office in the San Diego area and has been with Seirus from its inception in 1984.  Edwards Decl. at ¶¶2-4.  He will testify regarding the history of the company, and he has legacy knowledge of Seirus' overall business model and products.  *Id*. at ¶¶14-17.  He also will testify regarding Seirus' design, development and manufacturing processes and strategies (including for the accused products), relevant prior art (including Seirus' ThermaLux product line), and the outdoor cold weather products market in general.  *Id*. at ¶¶4-6, 14-17.  He also will testify regarding Seirus' sales and marketing practices and strategies.  *Id*. at ¶¶14-17.  Further, Mr. Edwards will testify regarding the technical aspects of Seirus' products, including the specifics of the design and manufacture of the accused products.  *Id*. at ¶17.

Mr. Carey is a co-President of Seirus and also has been with the company from its inception.  *See* M. Carey Decl. at ¶2.  Mr. Carey resides in San Diego, and he has historical knowledge regarding the company, its strategies and the industry as a whole.  *Id*. at ¶¶2-3.  Mr. Carey also will testify regarding Seirus' products, its business planning, sales and marketing strategies, and the development of the accused products.  *Id*. at ¶¶3-5.  He also will testify regarding the outdoor apparel industry as a whole and how Seirus fits into that industry and its strategy for distinguishing itself from competitors.  *Id*. at ¶¶3-4.  Mr. Carey also will testify regarding the organization of Seirus' sales force, its customer base and sales of the accused products.  *Id*. at ¶4.

Mrs. Carey, as the chief financial officer of Seirus, is the custodian of records and will lay foundation for documents for gross revenues, sales, cost of goods sold, returns,

Page 22 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4

administrative expenses, selling expenses, advertising expenses and development costs for the accused products. *See* W. Carey Decl. at ¶¶2-4. Mrs. Carey also will testify regarding the profit margins for the accused products and will provide an analysis of the documents regarding revenues, sales and costs and expenses. *Id.* at ¶3. Mrs. Carey also resides in San Diego, California and works from Seirus' Poway headquarters (*id.* at ¶2), as do <u>all other</u> Seirus employees/witnesses with relevant knowledge of facts in this matter.

b.    *The Court should ignore Plaintiff's choice of forum.*

While there has traditionally been a "strong presumption in favor of [a] plaintiff's choice of forum, … [r]ecent authority suggests that this presumption has been overstated, and courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum." *Microsoft Corp. v. TiVo, Inc.*, No. C11-00134, 2011 U.S. Dist. LEXIS, at *10-11 (W.D. Wash. May 19, 2011) (citing *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157-58 (S.D. Cal. 2005)); *see also Lightspeed*, 2010 U.S. Dist. LEXIS 106607, at *9 (granting transfer despite presumption). Here, Seirus has absolutely no connection to this District, and Plaintiff is merely headquartered here. However, the design, marketing and all other decisions about the accused products – and, hence, the locus of this dispute – occurred in the Southern District of California.

Plaintiff's Complaint offers little support for its choice of forum other than to allege "that Seirus has committed acts of infringement in this district by selling and offering to sell" infringing products and that some unnamed non-party witnesses purportedly reside in Oregon. *See* Complaint at ¶8. Thus, the essence of Plaintiff's venue claim appears to be that an accused product was allegedly sold at some point in the State of Oregon. However, it is well-settled that venue is not conferred merely because "some allegedly infringing products found their way into the [Oregon] market." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citing *Volkswagen of Am.*, 545 F.3d at 317-18); *and see Ricoh Co., supra*, 817 F. Supp. at 482-83 (sales

Page 23 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
          IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
          VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

of 503 accused products generating $14,000 in New Jersey "are insignificant…[n]or do these sales activities change the fact that the central and essential activities to this lawsuit – the design, research, development, and marketing of the [accused products] occurred outside New Jersey."). Where, as here, "a case featur[es] most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009)).

Further, the mere fact of some potential third party witnesses may reside in Oregon does not change this analysis, as it does not account for or overcome the fact that the locus of the dispute is squarely in the Southern District of California. Nor is there any guarantee that any such witnesses – who, notably, remain unidentified – would be relevant or important to this dispute. For example, assuming that some of the non-party witnesses referenced by Plaintiff are the inventors of the patents-in-suit, the Federal Circuit has said that inventor testimony is of little weight in patent cases. *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996). Additionally, Plaintiff concedes that at least one of its potential non-party witnesses resides in Utah. *See* Complaint at ¶14.

In *Microsoft*, the Washington district court granted TiVo's motion to transfer on a factual record not nearly as compelling and wanting as that presented here. There, Microsoft filed in the Western District of Washington where its headquarters were located. *See Microsoft*, 2011 U.S. Dist. LEXIS 53774, at *3. Importantly, the research and development that led to the four asserted patents took place in Washington, and documents related to the inventions were located at Microsoft's Washington headquarters. *Id.* Also, all nine of the named inventors (six of which were non-party witnesses, and three of which were Microsoft employees) resided in Washington. *Id.* TiVo, however, was headquartered in the Northern District of California. *Id.* at *2. TiVo developed the source code of the software that ran its accused products in the Northern District

Page 24 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

of California, and the majority of its witnesses and documents were in that district. *Id.* at *2-3. Nonetheless, despite these alleged "sufficient connections" to the Western District of Washington (which entitled Microsoft's forum choice to some measure of deference), that Court still properly transferred the case.

Likewise, this factor *strongly* favors a transfer to the Southern District of California.

        c.     *The comparatively low cost of litigating in the Southern District of California favors transfer.*

The convenience for and cost of attendance of witnesses is an "important factor in the transfer calculus." *Genentech*, 566 F.3d at 1343. As the Federal Circuit has stated, "[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Nintendo*, 589 F.3d 1199 (citing *TS Tech*, 551 F.3d at 1320). Relatedly, the Federal Circuit has adopted the Fifth Circuit's "100-mile" guideline: "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (citing *Volkswagen of Am.*, 545 F.3d at 317).

While the Southern District of California is a significantly more convenient forum for Seirus' witnesses, it is less so for Plaintiff's party witnesses. The reverse is true should the case continue in the District of Oregon. However, while this would appear to be a neutral factor on its face, it slightly favors a transfer to the Southern District of California. Plaintiff is larger and has significantly more financial resources than Seirus, and it is far better equipped to bear any burden that might be imposed due to travel in this case. *See BlazeFrame*, 2013 U.S. Dist. LEXIS 80488, at *5-6 (assessing relative financial status of parties); *Nintendo*, 589 F.3d at 1198-99 (cost of attendance is an important factor). On information and belief, Plaintiff (and its parent company)

Page 25 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
           IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
           VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

had net sales of nearly $1.7 billion in 2013.  Murphey Decl. at **Exhibit 9** (2013 Columbia 10-K statement).  Seirus, on the other hand, is a small San Diego company managed entirely by Messrs. Edwards and Carey and Mrs. Carey and which had annual 2013 sales of less than 1.5% of Columbia's sales for the same year.  Edwards Decl. at ¶7.  Venue in Oregon would impose a severe financial hardship on Seirus in terms of paying for flights, hotel and meal costs during what could be a lengthy trial.  *Id.*  Further, but by no means less importantly, requiring *all* of Seirus' key management personnel to travel – at the same time – to Oregon for an extended period to attend trial would impose a severe strain on Seirus' business operations.  *Id.* at ¶8;  *see also RecogniCorp*, 2012 U.S. Dist. LEXIS 143088, at *14 (granting transfer and recognizing that "[p]atent cases are disruptive and a drain on the time of management and employees").

As such, this factor favors a transfer to California.

        d.     *Any judgment obtained by Plaintiff would be more easily enforced in the Southern District of California.*

Although Seirus would honor its obligations in any jurisdiction, the fact remains that a potential judgment would be more easily enforced in the Southern District of California, where Seirus actually has assets.  *See Lueck*, 236 F.3d at 1145.  Seirus has no assets whatsoever in Oregon, not to mention any other type of connection to this forum.  Therefore, this factor favors transfer to the Southern District of California.

       2.     <u>The public interest factors also *strongly* favor transfer to the Southern District of California</u>

Courts in the Ninth Circuit also assess various "public interest factors" when evaluating a request to transfer venue.  Those factors include (1) the docket congestion between the two subject districts, (2) the local public and jury pool's interest in the controversy, and (3) issues relative to judicial economy.  *Jones*, 211 F.3d at 499; *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  As discussed below, each of these factors also favors transfer in this case to the extent applicable.

Page 26 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

        a.     *The Southern District of California has the stronger community interest in this dispute.*

Seirus has directly sold less than $800.00 of the accused products in Oregon in the time they have been available in this jurisdiction. Thus, as an initial matter, there is virtually no local interest in this matter for the residents of the District of Oregon. Comparatively, the citizenry of the Southern District of California has a far greater interest in the case because Seirus is headquartered there, the accused products were developed, marketed and sold from there, and the vast majority of the allegedly-infringing activity took place there. Thus, any local interest is insufficient to impose a burden on the residents of the District of Oregon to sit as jurors for a dispute among the particular parties to this case. *See In re Volkswagen*, 371 F.3d 201, 206 (5th Cir. 2004) ("[J]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)). As such, the Southern California community has the stronger interest, which heavily favors transfer to that venue. *See Microsoft*, 2011 U.S. Dist. LEXIS 53774, at *12, 14 (venue change granted despite apparent substantial connection to Washington that would generate local interest in adjudicating litigation).

Further, the Federal Circuit has rejected the argument that a community has a "substantial interest" in adjudicating a dispute merely because some allegedly-infringing products find their way into the relevant market. *TS Tech*, 551 F.3d at 1321; *Nintendo*, 589 F.3d at 1198 (citing the Fifth Circuit's opinion in *Volkswagen of Am.*, 545 F.3d at 317-18). In granting a mandamus petition, the *Nintendo* court unequivocally dismissed the mere presence or sale of a product as establishing any measure of a connection to a plaintiff's chosen venue. *Nintendo*, 589 F.3d at 1198 ("If the products were sold throughout the United States, as here, then the citizens of the venue chosen by Plaintiff 'have no more or less of a meaningful connection to the case than any other venue.'") (internal citation omitted).

Page 27 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

Thus, Plaintiff cannot support venue in this District merely by alleging the sale of a few accused products.  Even a mere $800.00 in direct sales over the course of a couple of years is insufficient to confer proper venue in this District.  *Id.*; *see also Ricoh Co.*, 817 F. Supp. at 482-83 (503 products sales generating a mere $14,000 in sales in New Jersey insufficient to overcome fact that "the central and essential activities to this lawsuit" occurred outside New Jersey).  Such allegations carry no weight in this analysis, and the scales must necessarily tip in favor of the Southern District of California, which is the locus of the allegedly-infringing conduct.

    b.  *Relative court congestion is neutral*.

  The Federal Circuit has noted that the court congestion factor is the "most speculative" and that "case-disposition statistics may not always tell the whole story." *Genentech*, 566 F.3d at 1347.  Nonetheless, recent statistics indicate that there is a relatively small difference in the time to trial between the two subject districts.  *See* Murphey Decl. at **Exhibit 11** (median time to trial interval of 27.0 months in Southern District of California; 22.5 months in District of Oregon).  Additionally, mere statistics relating to the potential for a slightly speedier disposition or speedier trial offered in a given district is illusory and therefore not a reliable indicator of actual events. *BlazeFrame*, 2013 U.S. Dist. LEXIS 80488, at *12-13 ("[t]he statistics do not reflect this court's significant case load").  Moreover, the federal statistics do not take into account the nature of a suit and the peculiar procedural events that may occur such as claim construction and *Markman* decisions in patent cases.  As the Court in *BlazeFrame* observed, the federal statistics do not take into account that "it takes much longer than one year just to arrive at a *Markman* hearing." *Id*. at *13.  Thus, at best, this factor is neutral.

/ /

/ /

/ /

Page 28 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
   IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
   VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant Seirus Innovative Accessories, Inc. respectfully requests that the Court grant this motion and dismiss this case;  alternatively, Seirus respectfully requests that the Court transfer this matter to the Southern District of California.

DATED: February 27, 2015.

TROUTMAN SANDERS LLP

*s/ Matthew D. Murphey*
LISA D. HARDIE, OSB # 080783
Troutman Sanders LLP
805 SW Broadway, Suite 1560
Portland, OR 97205
Telephone: (503) 290-2334
Facsimile: (503) 290-2405
Email: lisa.hardie@troutmansanders.com

MATTHEW D. MURPHEY(*admitted pro hac vice*)
5 Park Plaza, Suite 1400
Irvine, CA  9261419
Telephone: (949) 662-2700
Facsimile: (949) 622-2739
Email: matt.murphey@troutmansanders.com

PAUL E. MCGOWAN (*admitted pro hac vice*)
Troutman Sanders LLP
600 Peachtree St. NE, Suite 5200
Atlanta, GA 30308
Telephone:  (404) 885-3000
Facsimile:  (404) 962-6842
Email:  paul.mcgowan@troutmansanders.com

Attorneys for Defendant Seirus Innovative
Accessories, Inc.

24696533v4

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2015, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court of Oregon by using the CM/ECF system.  Participants in this case No. 3:15-cv-64 who are registered CM/ECF users will be served by the CM/ECF system.  To the extent any documents relevant to this matter are filed under seal, I certify that full and unredacted copies of such documents will be served on counsel of record for the Plaintiff.


*s/ Matthew D. Murphey*
Matthew D. Murphey


Page 30 – DEFENDANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S MEMORANDUM
           IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER
           VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

24696533v4