IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


COLUMBIA SPORTSWEAR NORTH
AMERICA, INC., an Oregon corporation,

       Plaintiff,

   v.

SEIRUS INNOVATIVE ACCESSORIES,
INC., a Utah corporation,

       Defendant.

No. 3:15-cv-00064-HZ

OPINION & ORDER

David W. Axelrod
Scott D. Eads
Nicholas F. Aldrich, Jr.
Schwabe, Williamson & Wyatt, P.C.
1211 SW 5th Ave., Ste. 1600
Portland, OR 97204

     Attorneys for Plaintiff

Jasmine C. Hites
Troutman Sanders LLC
805 SW Broadway, Suite 1560
Portland, OR 97205

Matthew D. Murphey
Troutman Sanders LLP
5 Park Plaza, Ste. 1400
Irvine, CA 92614

Paul E. McGowan
Troutman Sanders LLP
600 Peachtree St. NE, Suite 5200
Atlanta, GA 30308

      **Attorneys for Defendant**

HERNÁNDEZ, District Judge:

      Plaintiff Columbia Sportswear North America, Inc. ("Columbia"), alleges that Defendant Seirus Innovative Accessories, Inc. ("Seirus"), has infringed three of Columbia's patents related to a heat reflective lining used in outdoor sporting gear, U.S. Patent Nos. 8,424,119 (the "'119 Patent"), 8,453,270 (the "'270 Patent") (collectively "the Utility Patents"), and D657,093 (the "Design Patent"). The Court previously granted summary judgment that Seirus infringed the Design Patent. *See* Op. & Order, Aug. 10, 2016, ECF 105. Before the Court are the parties' cross motions for partial summary judgment regarding the Utility Patents. Specifically, Seirus alleges that the Utility Patents are invalid because they have either been anticipated or rendered obvious by prior art references pursuant to 35 U.S.C. §§ 102 and 103. By contrast, Columbia seeks summary judgment that the Utility Patents are not invalid. Also before the Court is Columbia's *Daubert* motion to exclude the expert testimony of Dr. Ira Block.

Columbia's Motion for Partial Summary Judgment of No Invalidity is granted in part. Seirus's Motion for Partial Summary Judgment of Invalidity is denied in its entirety. Columbia's *Daubert* Motion to Exclude the Expert Testimony of Ira Block is also denied.

BACKGROUND AND PROCEDURAL HISTORY

Columbia's flagship "Omni-Heat" technology is a heat reflective material that can reflect body heat back toward the user while allowing breathability and moisture wicking. The Design Patent relates to the wavy pattern design of a heat reflective element that Columbia uses on the inside of its garments. The Utility Patents relate to coupling heat-directing elements to the innermost surface of a garment in a discontinuous pattern to allow the garment to breathe while simultaneously reflecting body heat back toward the user. Aldrich Decl. Ex. 1, 14–15; Ex. 2, 14–15, ECF 115. Columbia uses Omni-Heat technology as a liner in a variety of garments including jackets, shirts, gloves, and more. Seirus also sells outdoor gear, including gloves and glove liners with a breathable, heat reflective material it calls "HeatWave."

## I.      The Disputed Patent Claims

Columbia asserts that Seirus infringes '119 Patent claims 2 and 16, and '270 Patent claims 2 and 23. The parties' motions pertain to the specific language of the asserted claims. The full text of the disputed claims and claims integrated by reference are as follows:

### A.      '119 Patent

> **1.**      A heat management material adapted for use with body gear, comprising: a base material having a transfer property that is adapted to allow, impede, and/or restrict passage of a natural element through the base material; one or more heat-directing elements, each coupled to a first side of a base material, the one or more heat-directing elements being positioned to direct heat in a desired direction, wherein a surface area ratio of heat-directing elements to base material is from about 7:3 to about 3:7, and wherein the surface area ratio of heat-directing elements to base

material permits the base material to retain partial performance of the transfer property.

**2.** The heat management material of claim **1**, wherein the base material comprises an innermost layer of the body gear having an innermost surface, and wherein the one or more heat-directing elements are positioned on the innermost surface to direct heat towards the body of a body gear user.

**15.** A method of making a heat management body gear material, comprising: coupling one or more heat-directing elements to a first side of a base material having a transfer functionality that is adapted to allow, impede, and/or restrict passage of a natural element through the base material, the one or more heat-directing elements being positioned to direct heat in a desired direction, wherein coupling the one or more heat-directing elements comprises coupling one or more heat-directing elements of a size and spacing to cover from about 30% to about 70% of the base material; pairing the heat management body gear material with a piece of body gear; providing, with the material, body heat management and base material functionality.

**16.** The method of claim **15**, wherein the base material further provides insulating properties, and wherein the one or more heat-directing elements reflect heat toward a body of a user.

**B.**     **'270 Patent**

**1.** A heat management material adapted for use with body gear, comprising: a base material having a transfer property that is adapted to allow, impede, and/or restrict passage of a natural element through the base material; and a discontinuous array of discrete heat-directing elements, each independently coupled to a first side of a base material, the heat directing elements being positioned to direct heat in a desired direction, wherein a surface area ratio of heat-directing elements to base material is from about 7:3 to about 3:7 and wherein the placement and spacing of the heat-directing elements permits the base material to retain partial performance of the transfer property.

**2.** The heat management material of claim **1**, wherein the base material comprises an innermost layer of the body gear having an innermost surface, and wherein the heat-directing elements are positioned on the innermost surface to direct heat towards the body of a body gear user.

**23.**     A heat management material adapted for use with body gear, comprising: a base material having a transfer property that is adapted to allow, impede, and/or restrict passage of a natural element through the base material; and a discontinuous array of heat-directing elements, each coupled to a first side of a base material, the heat directing elements being positioned to direct heat in a desired direction, wherein a surface area ratio of heat-directing elements to base material is from about 7:3 to about 3:7, and wherein the placement and spacing of the heat-directing elements permits the base material to retain partial performance of the transfer property, wherein the base material comprises an innermost layer of the body gear having an innermost surface, and wherein the heat-directing elements are positioned on the innermost surface to direct heat towards the body of a body gear user.

*Id.*

## II.     Prior Art References

Columbia moves for partial summary judgment that the none of the asserted claims described above in the Utility Patents are invalid over ten prior art references that Seirus has raised. Seirus relies on some, but not all, of the following prior art references to support its claims that the Utility Patents are invalid. The following is a complete list of the prior art references at dispute in the parties' cross motions for partial summary judgment:

1.     U.S. Patent No. 1,630,573, Heat Retaining Garment ("Rand '573")

2.     GB 741,875, Improvements Relating to the Production of Metallized Fabrics ("Rand '875)

3.     U.S. Patent Publication no. 2006/0179539, Article of Apparel Utilizing Targeted Venting Zones or Heat Retention Zones That May Be Defined Based on Thermal Profiles ("Harber")

4.     International Patent Publication no. WO 2008/103989, Protective Material Having Guard Plateso Clearly Visible Substrate ("Kim")

5.     U.S. Patent No. 5,626,949, Breathable Shell for Outerwear ("Blauer")

6.     U.S. Patent Publication No. 2002/0197924, Water-Vapour-Permeable Composite Material ("Halley")

7.      U.S. Patent Publication No. 2007/0173154, Coated Articles Formed of Microcapsules with Reactive Functional Groups ("Hartmann")

8.      U.S. Patent No. 7,135,424, Coated Articles Having Enhanced Reversible Thermal Properties and Exhibiting Improved Flexibility, Softness, Air Permeability, or Water Vapor Transport Properties ("Worley")

9.      GB Application 2,073,613, Binder-Coated Textiles ("Fottinger")

10.     GB Application 2,350,073, Coated Material ("Vaughn")

Aldrich Decl. Exs. 19, 20, 4, 8, 9, 10, 17, 21, 11, 18.

## III.    Procedural History

The Court previously granted summary judgment that Seirus's HeatWave fabric infringed the Design Patent. Op. & Order, Aug. 10, 2016. In that Opinion, the Court also constructed claim terms relevant to parties' motions. *Id.* Seirus moves for summary judgment on "Counts IV and VI of its Counterclaims, its third Affirmative Defense of Invalidity, and against Columbia on Counts II and III of its Complaint." Seirus Mot. Summ. J. ("Seirus MSJ") at 1, ECF 110. Columbia moves for summary judgment on Seirus's invalidity counterclaims and affirmative defense of invalidity. Columbia Mot. Summ. J. ("Columbia MSJ") at 1, ECF 108. The central issues in the parties' cross motions are whether the Utility Patents are invalid as anticipated and/or obvious pursuant to 35 U.S.C. §§ 102(b), 103. Relatedly, Columbia has also moved to exclude the testimony of Seirus's expert Dr. Block. *See*, Daubert Mot., ECF 113. The Court considers Columbia's *Daubert* motion in tandem with the parties' cross-motions for partial summary judgment because Dr. Block's testimony is entwined with Seirus's obviousness arguments.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (quoting *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

DISCUSSION

Both parties seek summary judgment as to whether the Utility Patents are anticipated or obvious. A patent may be invalidated if it is either anticipated by a single prior art reference or rendered obvious by a combination of prior art references. 35 U.S.C §§ 102(b), 103. In determining whether a patent has been anticipated, courts look to see if a single prior art reference describes every element of the claims asserted in the patent. By contrast, when determining obviousness, courts look to several factors for determining whether a skilled artisan would have been motivated to combine the teaching of multiple prior art references to achieve

the asserted invention. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068–69 (Fed. Cir. 2012) [hereinafter *Cyclobenzaprine*]. A party seeking to invalidate a patent either as anticipated or obvious must do so by clear and convincing evidence. *Id.*; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

## I.      Anticipation

Under § 102, "[a] person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for the patent in the United States." 35 U.S.C. § 102(b) (2006).[1] For a patent to be anticipated, a single prior art reference must "describe every element of the claimed invention." *Net MoneyIn, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) (quoting *Xerox Corp. v. 3Com Corp*, 458 F.3d 1310, 1322 (Fed. Cir. 2006)). "Because the hallmark of anticipation is prior invention, the prior art reference—in order to anticipate under 35 U.S.C. § 102—must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'" *Id.* (citing *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)). Further, the prior art must "enable one of skill in the art to practice an embodiment of the claimed invention without undue experimentation." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1341 (Fed. Cir. 2011) (citing *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009)). The party asserting invalidity carries the burden of establishing it and is required to prove the defense by clear and convincing evidence. *i4i Ltd. P'ship*, 564 U.S. at 95. If an art reference is listed on the face of the patent "the examiner is presumed to have considered it" and the defendant has "the added burden of

---

[1] The parties agree that this case is governed by a previous version of 35 U.S.C. § 102, effective prior to a 2011 amendment which made general changes to the section. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 19(d), 125 Stat. 284, 332–33 (2011).

overcoming the deference that is due to a qualified government agency presumed to have properly done its job." *Shire LLC v. Amneal Pharm.*, LLC, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008)).

### A.  Uncontested Prior Art References

There are certain prior art references which Columbia seeks summary judgment on the issue of anticipation that Seirus does not. Columbia seeks summary judgment that each of the ten prior art references listed above do not anticipate the Utility Patents. Columbia MSJ at 1. Seirus, by contrast, seeks summary judgment that Fottinger, Harber, and Vaughn anticipate, and asks that summary judgment not be granted in Columbia's favor as to Hartmann and Worley. Seirus MSJ at 13; Seirus Resp. at 25–28, ECF 119. There are several references which Seirus does not assert or defend on the issue of anticipation, including: Rand '573, Rand '875, Kim, Blauer, and Halley. Accordingly, the Court grants summary judgment that these five references do not anticipate the Utility Patents. The parties' claims as to Fottinger, Vaughn, Harber, Hartmann, and Worley will be considered in turn.

### B.  Fottinger

Fottinger is a UK patent titled "Binder-coated Textiles." Aldrich Decl. Ex. 11. "This invention relates to textile sheets which can have good heat retention, and which comprise a non-woven, woven or knitted fabric carrying a discontinuous coating of a binder and metal powder on one face." *Id.* at p. 2, at 1:5–9. Fottinger discloses a coating for garments comprised of 8% aluminum flakes combined with a binder. *Id.* Fottinger applies its coating to 5–40% of the garment's liner. Further, Fottinger states that by ensuring that the coated areas are separated, that breathability and draping properties of the fabric need not be impaired. *Id.* at p. 2, at 1:60–65. The parties dispute to what degree the patent examiner considered Fottinger during the patent

application process. Fottinger was submitted to the examiner who concluded that it did not anticipate any of the asserted claims. Aldrich Decl. Exs. 13 & 14. Seirus argues that Fottinger was disclosed to the examiner late in the application process and was never discussed by the examiner. Seirus MSJ at 15. What is clear, however, is that Fottinger was at least disclosed to the examiner who is "presumed to have properly done its job." *Shire LLC*, 802 F.3d at 1307.

    *1.*     *Heat Reflection*

Columbia argues that Fottinger does not direct a person of ordinary skill in the art to construct a "garment with heat-directing elements [] positioned to direct heat in a desired direction . . . and wherein the heat-directing elements are positioned in the innermost surface to direct heat towards the body of a body gear user." Columbia MSJ at 29 (alterations in original). Columbia further argues that Fottinger's experiment shows heat conduction, not heat reflection back to the body. *Id.* Fottinger's experiment involved applying the coating to portions of a jacket and taking a thermal image that jacket. Aldrich Decl. Ex. 11, p.3, at 2:106–116.This experiment revealed that the coated portions of the jacket were warmer than the rest. *Id.* at p. 3, at 2:117–124. Columbia's expert, Dr. Christine Cole, testified that this experiment showed only that the jacket itself became warmer because of the aluminum, and that it did not confirm that there was heat reflection. Cole Decl. ¶¶ 17–18, ECF 109. Rather, Fottinger would lead a person of ordinary skill in the art to create a jacket that absorbed or conducted heat and did not direct heat in a desired direction. *Id.* at ¶ 20. Seirus responds that, notwithstanding the inevitable heat conduction outside of the jacket, the areas covered by the coating would reflect heat back to the user. Block Decl. ¶ 17. In essence, Seirus maintains that Fottinger discloses a combination of conduction and reflection. Aldrich Decl. Ex. 3, pp. 16–17, at 245:15–19, 23–25; 246:1–8.

The parties have raised a genuine dispute of material fact as to whether Fottinger discloses a heat reflecting element that reflects heat back towards the user. Fottinger discloses that the "different degrees of radiated heat . . . [are] reflected by a sheet of the invention and this allows the maintenance of the existing temperature differences." Aldrich Decl. Ex. 11, p. 3, at 2:71–75. Dr. Block conceded that Fottinger cannot confirm heat reflection but maintains that the experiment could have shown a "combination of conduction and reflection." Aldrich Decl. Ex. 3, pp. 16–17, at 245:23–25, 246:1–8. Columbia argues that because Fottinger's experiment failed, it necessarily cannot enable any function that its disclosure cannot perform. While Fottinger mentions heat reflectance, Seirus has not demonstrated by clear and convincing evidence that it anticipates the asserted claims' requirement that one or more heat-directing elements reflect heat toward a body of a user.

Because Seirus has not demonstrated that Fottinger anticipates every element of the asserted claims by clear and convincing evidence, it is not entitled to summary judgment of invalidity. On the other hand, in looking at the evidence in the light most favorable to Seirus, Fottinger claims reflective properties. Therefore, the Court must continue its analysis to determine whether other elements are not anticipated. If Fottinger does not anticipate a different element of the asserted claims, then Columbia would be entitled to summary judgment of no invalidity.

### 2. Innermost Surface

Columbia also asserts that Fottinger does not disclose heat directing elements positioned on the innermost surface of the garment to direct heat back to the user. Columbia Reply at 11–12, ECF 126. Seirus contends that Fottinger discloses that the coated fabric could be used as lining fabrics which can constitute the innermost layer of a garment. Seirus MSJ at 20. Fottinger

states that "products of the invention are very suitable for use as interlining and as lining fabrics for articles of clothing. They may also be used as outer fabrics for articles of clothing, in which case the coated face will be on the inside of the article." Aldrich Decl. Ex. 11, p. 3, at 2:48–53. Seirus has not shown by clear and convincing evidence that Fottinger discloses using the invention on the innermost surface of a garment as required by the asserted claims. However, when viewing the evidence in the light most favorable to the non-moving party, Seirus has at least raised a genuine factual dispute as to whether Fottinger discloses the innermost surface requirement.

### 3. *Coverage Ratio*

Lastly, the parties dispute whether Fottinger discloses the 30–70% coverage limitation required by the Utility Patents. Columbia argues that each individual aluminum flake in the binder is a heat directing element which would put Fottinger's coverage at less than 1%. Seirus, by contrast, argues that the binder itself is the heat reflecting element, putting the range at 5–40%. Generally, where the patent contains a value range and a prior art contains a range within the patented range, it will anticipate. *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985) (citing *In re Petering*, 301 F.2d 676 (C.C.P.A. 1962)). Where the ranges overlap, the question of whether the asserted range is anticipated becomes fact-intensive. *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1083 (Fed. Cir. 2008) (citing *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006)). Relevant to this inquiry is whether the limitation is "critical" to enable the invention to operate effectively or whether the invention "would operate differently at various points within the range disclosed" in the prior art reference. *Osram Sylvania v. Am. Induction Techs. Inc.*, 701 F.3d 698, 705–06 (Fed. Cir. 2012).

In *Atofina*, the Federal Circuit considered two overlapping temperature ranges and concluded that a temperature range of 150–350 degrees Celsius disclosed in a prior art reference did not anticipate the 330–450 degrees Celsius range asserted in the patent. 441 F.3d at 993, 999. The Federal Circuit held that "although there is a slight overlap, no reasonable fact finder could determine that this overlap describes the entire claimed range with sufficient specificity to anticipate this limitation of the claim. The ranges are different, not the same." *Id.* at 1000.

Given that the ranges only overlap by 10%, Seirus has not demonstrated by clear and convincing evidence that Fottinger anticipates the Utility Patents' 30–70% coverage limitation. The parties dispute whether the 30–70% range is "critical" to the Utility Patents and whether the invention could operate outside of the claimed range. "A trial may reveal a minimal difference between" Fottinger's purported range of 5–40% coverage and the Utility Patent's 30–70% coverage range, "or that a person of ordinary skill would interpret" a range of 5–40% coverage as clearly disclosing 30–70% coverage. *Osram Sylvania*, 701 F.3d at 706. Accordingly, the Court finds that there is a disputed issue of material fact as to whether Fottinger's range anticipates the Utility Patents' coverage area limitation. Therefore, both parties' motions for summary judgment regarding Fottinger are denied.

## C. *Vaughn*

Vaughn is a UK patent titled "Coated Material." Aldrich Decl., Ex. 18. Vaughn discloses applying a polymeric coating including carbon particles to increase a fabric's abrasion resistance, water-resistance, and water-vapor permeability. *Id.* at 2–3. Vaughn discloses that a "discontinuous pattern may be any suitable pattern, such as a pattern of dots or lines, or a grid pattern" that covers 20–80%, "preferably 30–70%" of the fabric. *Id.* at 8. Vaughn states that the "polymer is a heat meltable polymer and the incorporation of the carbon particles is in order to

improve the UV stability of the membrane produced and to provide elevated IR reflectance." *Id.* at 2–3.

Columbia points out that the abrasion resistant dots are made up of the polymeric coating, not the carbon additive, which comprises only 0.3% of the binder. *Id.* at 11. Columbia asserts that Vaughn's abrasion resistant dots are not heat-reflecting elements simply because of the carbon additive and that it does not disclose that the polymer itself is a heat directing element.

Vaughn's reference to "elevated IR reflectance" does not anticipate a heat directing element that reflects heat toward a body of a user. Vaughn does not otherwise discuss heat and is primarily concerned with promoting "water-resistance" and "water-vapour-permability." *Id.* at 9. When read in context, Vaughn's stated reason for adding carbon was to provide "UV stability" and "IR reflectance" because the polymer was meltable. *Id.* at 2. Vaughn also discloses that adding the carbon made the abrasion resistant polymer more durable and helped the garment to handle the resistance of washing. *Id.* at 12. Vaughn does not disclose a heat directing element designed to direct heat in a desired direction toward the user's body. Accordingly, Vaughn does not disclose every element of the asserted claims nor does it enable a person of skill in the art to practice an embodiment of the Utility Patents without undue experimentation. Summary judgment is granted to Columbia that Vaughn does not anticipate.

**D.    *Harber***

Harber is a U.S. patent titled "Articles of Apparel Utilizing Targeted Venting Zones or Heating Retention Zones That May Be Defined Based on Thermal Profiles." Aldrich Decl., Ex. 4. Harber first develops a "thermal profile" by taking an infrared photograph of the back of an athlete. *Id.* Then Harber discloses applying a pattern of vents or insulation of varying sizes over the areas that produce the most heat. *Id.* Harber discloses "apparel including heat retention . . . at

targeted locations in the garment structure to provide enhance or improved heating . . . effects." *Id.* at ¶ 1. Harber further discloses "Targeted Insulation or Heat Retaining Zones" stating that in some examples, this material "actively heats up and/or reflects heat energy back to the wearer's body." *Id.* at ¶¶ 77, 81.

The parties dispute whether Harber discloses the 3:7 to 7:3 coverage ratio recited in all of the claims. Harber's text does not state what its coverage ratio is. Rather, Harber contains several figures including infrared based images of an athlete's thermal profile displaying heat retention or venting zones. *Id.* at Figs. 1 & 3. The figures also include illustrations of garments overlaid with a pattern derived from a thermal profile. *Id.* at Figs. 4 & 5. Columbia argues that because Harber is silent on the topic of coverage ratio, Seirus cannot rely on its figures to define Harber's ratio. "[I]t is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000) (citing *In re Wright*, 569 F.2d 1124, 1127 (C.C.P.A. 1977)).

Harber discusses the possibility of scaling a thermal profile generated from a person to produce garment's that would fit that person's body type. *Id.* at ¶¶ 46, 53, 56, 71, 84, 90. Harber explains:

> For example, the thermal profile and/or the opening pattern generated therfrom for a person of medium build and a height of 5'10" may be scaled (e.g., proportionally adjusted) for use to produce larger or smaller garments for other persons of the same general medium buildy body type. Other types of scaling, interpolation, and/or extrapoation based on known patterns and/or known thermal profiles may be possible without departing form this invention.

*Id.* at ¶ 71. Harber also explains that: "in this manner, the insulation patterns in clothing can be better targeted to users with different body types without the need to take a thermal profile of the custom fit each individual user." *Id.* at ¶ 84.

Harber's specificaitons do not mention any coverage area ratio. Harber discloses that there are many ways to create thermal profiles and adapt those profiles to garments to fit a variety of body types, fitness levels, and athletic activities. *Id.* In other words, Harber is silent on the issue of coverage ratio. Accordingly, Seirus cannot rely on Harber's figures to show its coverage ratio. Because Harber does not anticipate the 3:7 to 7:3 range limitation contained in the asserted claims, the Court grants summary judgment to Columbia that Harber does not anticipate and denies Seirus's motion on this issue.

### E.     *Hartmann & Worley*

For purposes of the parties' motions, Hartmann and Worley will be simultaneously considered. Hartmann and Worley are U.S. patents assigned to the same company from the same inventor and both involve using microcapsules in plastic binders. Aldrich Decl., Exs. 17, 21. Hartmann is titled: "Coated Articles Formed of Microcapsules with Reactive Functional Groups." *Id.* Ex. 17. Worley is titled: "Coated Articles Having Enhanced Reversible Thermal Property and Exhibiting Improved Flexibility, Softness, Air Permeability or Water Vapor Transportation Properties." *Id.* Ex. 21. Hartmann and Worley disclose microcapsules made up of "phase change" materials which absorb heat if the temperature increases above a certain point and release that stored heat when the temperature decreases below a certain point. Cole Decl. ¶¶ 10–11. Hartmann and Worley also disclose applying the coating in discontinuous patterns to fabric in order to increase breathability and heat transfer in coverage ranges from 20–100%, 40–100%, or 80–100%. Aldrich Decl. Ex. 21 at 2–4; Ex. 17 at ¶¶ 2, 76, 93.

The parties dispute whether Hartmann or Worley disclose heat-directing elements positioned on the innermost surface of a garment to direct heat towards the body of the user. Columbia contends that the microcapsules operate as "heat sinks" that absorb and release body heat rather than reflecting it in a desired direction. Columbia analogizes the microcapsules to a bare lightbulb hanging in a room which releases light in all directions, as opposed to a flashlight directing light in a particular direction. Columbia Reply at 13–15. In response, Seirus argues that Hartmann and Worley disclose that the fabric with the coating can be worn such that it is positioned next to a user's skin and would necessarily release heat toward the user. Seirus Resp. at 26–27.

The Court finds that neither reference discloses a heat-directing element which is positioned to reflect heat in a desired direction back towards the body of the user. Rather, these references disclose an invention which absorbs heat and then releases it when the temperature goes below a certain point. While some of that heat would logically go toward the user if the microcapsule-infused binder was placed on the innermost surface of a garment, neither reference discloses directing heat back towards the body of the wearer as required by the asserted claims. Because Hartmann and Worley do not disclose directing heat in a desired direction or directing heat toward the body of the wearer, the Court grants summary judgment to Columbia that neither reference anticipates the asserted claims. Seirus's motion on this issue is denied.

## II. Obviousness

Both parties have moved for summary judgment on the issue of whether the Utility Patents are invalid as obvious. Under 35 U.S.C. § 103, a patent is obvious if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person

having ordinary skill in the art to which the claimed invention pertains." Seirus makes three separate obviousness arguments using the following prior art reference combinations: (1) Vaughn in view of Harber or Fottinger; (2) Harber in view of Vaughn, Fottinger, or Halley; and (3) Rand in view of Fottinger, Vaughn, or Halley. The parties also dispute whether other considerations of nonobvious beyond prior art references are dispositive of the issue. Because there are genuine issues of material fact regarding prior art reference combinations, motivation, and objective considerations of nonobviousness, the Court denies Seirus's motion for summary judgment on obviousness.

Additionally, Columbia moves for summary judgment of no invalidity for obviousness only on the ground that Seirus's arguments rely on Dr. Block's testimony, which it argues should be excluded. Because the Court denies Columbia's *Daubert* Motion, its motion for summary judgment based on obviousness is also denied.

"Generally, a party seeking to invalidate a patent as obvious must 'demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'" *Cyclobenzaprine*, 676 F.3d at 1068–69 (quoting *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)) (some internal quotation marks omitted). The "obviousness inquiry must be expansive and flexible." *Id.* at 1069 (citing *KSR Int'l Co. v. Teflex, Inc.*, 550 U.S. 398, 415 (2007)).

Courts apply the four "*Graham* factors" when determining whether a patent is obvious. "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *Id.* at 1068–69

(citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966)). Regarding the fourth factor, objective considerations include: commercial success, long-felt but unresolved need in the industry, industry praise for the invention, numerous requests for licenses after the product launched, copying of the patented inventions, skepticism of experts, and failure of others. *See Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1569 (Fed. Cir. 1987).

The *Graham* factors help the court to determine whether a skilled artisan would have been motivated to combine the prior art references. *See InTouch Techs., Inc. v. VGO Communs., Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014). In *KSR*, the Supreme Court explained that the patent challenger must address the issue of motivation as part of the obviousness inquiry:

> Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue. To facilitate review, this analysis should be made explicit.

550 U.S. at 418 (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). "Combining prior art references without evidence of such a suggestion, teaching, or motivation simply takes the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability—the essence of hindsight." *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999), *abrogated on other grounds*, *In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000) (citing *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed. Cir. 1985)).

**A.    *Whether the Asserted Claims are Rendered Obvious by Fottinger, Vaughn, Harber, Halley, and/or Rand***

*1.    Vaughn in View of Harber or Fottinger*

Once more, Vaughn disclosed applying abrasion resistant dots with a carbon additive to a garment, Fottinger disclosed combining aluminum flakes with a binder, and Harber disclosed using thermal profiles to identify heat retaining zones that could be insulated. Aldrich Decl., Exs. 4, 11, 18. According to Seirus, if a person of ordinary skill in the art was looking to improve the heat-directing capacity of Vaughn, then they would look to Fottinger and Harber to fill in the gap in the prior art.

The Court finds that, when looking at the evidence in the light most favorable to Columbia, Seirus has not shown by clear and convincing evidence that a skilled artisan would have been motivated to combine Fottinger and Harber with Vaughn. Vaughn teaches about a lightweight, waterproof, abrasion-resistant outer shell that could be used on garments, tents, and for other outdoor purposes. Seirus has produced little evidence that someone would be motivated to add Fottinger or Harber's heat-directing elements to a garment simultaneously using Vaughn's abrasion resistant dots. Seirus cites to a single paragraph of Dr. Block's declaration to support this argument. Seirus MSJ at 40; Block Decl. ¶ 159, ECF 111. Dr. Block opined that:

> A person of ordinary skill in the art, if they were looking to improve heat-directing capabilities of Vaughn . . . while still retaining partial performance of the base fabric[,] . . . would look to similar teachings such as Harber and Fottinger to identify the elements that could be applied to the base material to prove heat management, by for example, heat direction.

Block Decl. ¶ 159. Dr. Block further opined that a person of ordinary skill "would have readily recognized the wide-ranging benefits" of combining the prior art references, "would know" that placing Harber or Fottinger's elements would improve Vaughn, and such a person "would be aware of the advantages provided by such a substitute." *Id.* This testimony does not constitute clear and convincing evidence showing *why* a person of ordinary skill in the art would be motivated to combine the references. Instead, Seirus uses the Utility Patents as a "blueprint for

piecing together the prior art to defeat patentability—the essence of hindsight." *In re Dembiczak*, 175 F.3d at 999 (citation omitted). While Dr. Block's testimony provides some evidence of motivation, it does not reach the threshold requirement of clear and convincing evidence. The question of whether a person of ordinary skill would have been motivated to combine Vaughn with Fottinger or Harber is a fact question for the jury and both parties' motions regarding this issue are denied. *See Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016) (en banc) (citations omitted) ("What a prior art reference teaches and whether a skilled artisan would have been motivated to combine references are questions of fact.").

2.      *Harber in View of Vaughn, Fottinger, or Halley*

Seirus argues that Vaughn, Fottinger, or Halley can supply the 30–70% coverage limitation to Harber. As previously explained, the Court finds that Harber does not anticipate the 30–70% coverage limitation because the patent is silent on that specification. The Court also finds that, as to Fottinger, there is a genuine dispute of material fact as to whether the prior art's overlapping range anticipates the 30–70% limitation. Accordingly, Fottinger cannot supply the 30–70% coverage limitation to Harber at this juncture.

Vaughn discloses a 30–70% surface area coverage area ratio; however, that prior art was primarily concerned with abrasion resistance, waterproofing, and water-vapor permeability. Halley, a U.S. patent titled "Water-Vapour-Pearmeable Composite Material," was also concerned with waterproof shells and abrasion resistant dots. Aldrich Decl. Ex. 17. Harber disclosed identifying heat retention zones based off of an athlete's thermal profile and custom tailoring a garment to that athlete. To apply a coverage limitation not based on Harber's thermal profile is inconsistent with its central teaching. Seirus fails to show by clear and convincing evidence why a skilled artisan would be motivated to combine prior art references with Harber.

Once more, Seirus relies on a single paragraph from Dr. Block's testimony to support its obviousness argument. *See* Block Decl. ¶ 162. Dr. Block opined that a skilled artisan "looking to employ a more desirable surface area coverage ratio of heat directing elements" would look to Fottinger, Vaughn, or Halley. *Id.* Dr. Block does not explain why a skilled artisan would be so motivated. Harber's central focus on overlaying heat retention zones based on thermal profiles onto garments belies the claim that a skilled artisan would be motivated to combine a "more desirable surface area coverage ratio" to Harber. *Id.* Here too, Seirus employs hindsight in an attempt to cobble together the 30–70% coverage limitation from Vaughn or Halley with Harber. Accordingly, the Court denies Seirus's motion on this issue. Because there are disputed material facts regarding whether Fottinger discloses the 30–70% range and whether a skilled artisan would be motivated to combine the prior art references with Harber to supply the coverage limitation, the Court also denies Columbia's motion on this issue.

3.      *Rand in View of Fottinger, Vaughn, or Halley*

Rand refers to two patents: '573 and '875 (collectively "Rand"). Rand '573 is a U.S. patent titled "Heat Retaining Garment," and Rand '875 is a UK patent titled "Improvements Relating to the Production of Metallized Fabrics." Aldrich Decl. Exs. 19, 20. Rand discloses using a discontinuous pattern of metallic film or metal flakes in a coating on a garment's lining to promote heat retention and breathability. *Id.* Rand also lacks the 30–70% coverage limitation and Seirus argues that Fottinger, Vaughn, or Halley can supply it. Seirus supplies no independent argument as to why a skilled artisan would be motivated to combine the prior art references. For the same reasons discussed above, Seirus's obviousness argument fails because it does not explain why "a skilled artisan would have been motivated to combine the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable

expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007) (citing *DyStar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006)).

The parties also dispute whether Rand discloses the innermost surface requirement. Rand teaches that "[t]he invention comprises a coat or similar garment which has on the inner surface thereof . . . a heat reflective layer." Aldrich Decl. Ex. 19, p. 3, at 1:21–30. Rand also states that "[a] better understanding of the invention is gained from an examination of the accompanying drawings." *Id.* at p. 3, at 1:31–33. Most of Rand's figures show the invention being used on an outer surface. *Id.* Figs. 1, 2, 3, 5. Others depict illustrations of how the invention interacts with fabric. *Id.* Figs 7–10. Additionally, Dr. Block gave conflicting testimony on this issue. He testified at his deposition that Rand did not address putting the reflective coating on the inside of a garment. Aldrich Decl. Ex. 3, pp. 7–9. Dr. Block subsequently stated that he incorrectly testified at his deposition and that Rand clearly disclosed the innermost surface limitation. Block Decl. at ¶ 175. Given this record and that Rand teaches using the invention on the "inner surface" of a garment, the Court concludes that the parties have raised genuine issues of material fact as to motivation and whether Rand discloses the innermost surface limitation. Accordingly, the Court denies both parties' motions regarding this issue.

**B.    *Objective Considerations of Nonobviousness***

In addition to combinations of prior art references, the parties also dispute the role of the Fourth *Graham* factor—objective considerations of nonobviousness—in the obviousness inquiry. Specifically, the parties dispute whose burden it is to produce evidence of objective considerations of nonobviousness. The parties also dispute the strength of the evidence that Columbia has produced on this issue. Objective considerations include: commercial success,

long-felt but unresolved need in the industry, industry praise for the invention, numerous

requests for licenses after the product launched, copying of the patented inventions, skepticism

of experts, and the failure of others. *See Panduit Corp.*, 810 F.2d at 1569. The Federal Circuit

summarized the role of objective considerations in the obviousness inquiry thusly:

> Objective indicia of nonobviousness play a critical role in the
> obviousness analysis. They are not just a cumulative or
> confirmatory part of the obviousness calculus but constitute[]
> independent evidence of nonobviousness. This case illustrates a
> good reason for considering objective indicia as a critical piece of
> the obviousness analysis: Objective indicia can be the most
> probative evidence of nonobviousness in the record, and enables
> the court to avert the trap of hindsight. Here, the objective indicia
> of nonobviousness are crucial in avoiding the trap of hindsight
> when reviewing, what otherwise seems like, a combination of
> known elements.

*Leo Pharm. Prod., Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013) (internal quotation marks

and citations omitted).

The Federal Circuit has clarified the obviousness analysis, explaining that a court cannot

decide the issue until it has considered all four *Graham* factors and that the burden of production

does not shift to the patentee to produce evidence of nonobviousness until the challenger has

made out a prima facie case of obviousness. *See Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,

719 F.3d 1346, 1354 (Fed. Cir. 2013) ("[A]s long as the court reserved its ultimate conclusion on

validity until after it considered the evidence from both sides, this language simply reflects the

courts shift of the burden of production once the court determined that the challenger has

established a prima facie case of obviousness.").

> [T]he burden of persuasion remains with the challenger during
> litigation because every issued patent is entitled to a presumption
> of validity. However, the presumption of validity does not relieve
> the patentee of any responsibility to set forth evidence in
> opposition to a challenger's prima facie case which, if left
> unrebutted, would be sufficient to establish obviousness.

*Id.* at 1353.

In any event, Court has not determined that Seirus has established a prima facie case of obviousness because there are material factual disputes as to the second *Graham* factor. Furthermore, Columbia has produced evidence of nonobviousness which Seirus claims is weak. Because the Court has already denied the parties' motions regarding obviousness, it does not address the parties' dispute about the sufficiency of Columbia's evidence of nonobviousness.

## III. Columbia's Daubert Motion

Columbia moves to exclude the testimony of Dr. Block. Columbia asserts that in order for Seirus to make out its obviousness defense, it must rely upon Dr. Block because expert testimony is necessary to explain to an ordinary juror what would have been obvious in the relevant field. Columbia makes two arguments supporting this motion. First, that Dr. Block failed to account for objective considerations of nonobviousness; and second, that he applied the wrong legal standard for finding a motivation to combine prior art references. Because Dr. Block's opinion is not supported by sufficient facts and is based on the incorrect legal standard, Columbia maintains that it is unreliable and must be excluded pursuant to Rule 702 of the Federal Rules of Evidence.

Under Federal Rule of Evidence 702, a qualified expert witness may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Court must exercise its gatekeeping function and ensure that expert

testimony is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

579, 589 (1993). "When the methodology is sound, and the evidence relied upon sufficiently

related to the case at hand, disputes about the degree of relevance or accuracy (above this

minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship*,

598 F.3d at 852 (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)).

However, the Federal Circuit has "encourage[d] exercise of the trial court's gatekeeper authority

when parties proffer, through purported experts, not only unproven science, but markedly

incorrect law. Incorrect statements of law are no more admissible through 'experts' than are

falsifiable scientific theories." *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) (citing

*Daubert*, 509 U.S. at 579).

## A.    *Objective Considerations of Nonobviousness*

A court cannot decide the issue of obviousness until it has considered all four *Graham*

factors. Dr. Block's expert report purports to testify about whether the Utility Patents are

obvious. *See* Aldrich Daubert Decl. Ex. 1, ECF 116. The parties do not dispute that Dr. Block's

expert report did not include objective considerations of nonobviousness. Accordingly, Columbia

argues that Dr. Block's expert report should be excluded because it fails to account for one of the

four *Graham* factors.

Dr. Block did, however, submit a separate declaration addressing objective

considerations of nonobviousness. *See* Block Decl. ¶¶ 155–157.[2] That declaration was filed in

---

[2] The complete text of Dr. Block's account of objective considerations of nonobviousness is as follows:

155. I further understand that the fourth Graham factor relates to so-called "secondary considerations" of non-obviousness. I also understand that it is the patentee's burden to prove such "secondary considerations," and also to show a nexus between the invention as claimed. I understand, however, that such evidence is insufficient to overcome a strong prima facie case of obviousness.

support of Seirus's motion for summary judgment and in response to Dr. Cole's rebuttal report. Columbia moves to strike Dr. Block's declaration on the ground that it is a post-hoc rebuttal of Columbia's evidence. Columbia argues that the declaration does not render Dr. Block's original expert report admissible because he concluded that the Utility Patents were obvious without taking into account objective considerations of nonobviousness. *See* Columbia Resp. at 32–35, ECF 120.

Federal Rule of Civil Procedure 37(c)(1) provides that: "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Here, the Court finds that Dr. Block's failure to account for objective considerations in his expert report was substantially justified because his declaration in support of Seirus's summary judgment reply was the first opportunity that Seirus had to respond to Dr. Cole's rebuttal report. Dr. Cole filed her Rebuttal Report on August 9, 2016. Dr. Block submitted his declaration responding to that report on September 30, 2016. Block Decl. ¶ 156 ("I reviewed Dr. Cole's discussion of such alleged secondary considerations in her Rebuttal Report concerning Validity, dated August 9, 2016."). Seirus cannot be expected to rebut Columbia's evidence of objective considerations of nonobviousness before Columbia has identified that evidence. Further, the contents of Dr. Block's declaration are also admissible under Rule 56(e) of

---

156. I reviewed Dr. Cole's discussion of such alleged secondary considerations in her Rebuttal Report concerning Validity, dated August 9, 2016. I disagree with several of her observations. For example, Dr. Cole alleges that there was a "failure of others to solve the problem" and "long felt but unresolved needs," but as stated herein, that is not the case as many others identified the alleged problem and came up with the alleged inventive solution. Dr. Cole also states without any support that the alleged invention was met with skepticism within Columbia. Further, several of the licenses appear to be litigation-driven and do not support any claimed nexus to the alleged invention.

157. I understand from counsel that the "nexus" must be tied to the novel aspects of the invention, and given the state of the prior art, I do not believe that any such "nexus" exists and I do not believe that Dr. Cole's cited considerations "tip the scale of patentability."

the Federal Rules of Civil Procedure, which provides that the court may give a party an

opportunity to properly support or address another party's assertion of fact. Fed. R. Civ. P. 56(e).

Therefore, Columbia's motion to strike Dr. Block's declaration is denied. Because Dr. Block

does testify about objective considerations of nonobviousness, the Court also denies Columbia's

*Daubert* motion on this issue. To the extent that Dr. Block's testimony accounts for some, but

not all forms of objective considerations, the Court finds that this disputed gap goes to the

weight, rather than the admissibility of his testimony. *See i4i Ltd. P'ship*, 598 F.3d at 852;

*Keytrack, Inc.*, *v. Key Register, LLC*, No C 03-00870 WHA, 2004 WL 2944043, at *3 (N.D. Cal.

Mar. 30, 2004) ("Simply put, [the expert's] failure to consider other evidence goes to the weight

of his opinion. The failure does not justify the exclusion of relevant testimony. This is a matter

for cross-examination.").

## B.       *Motivation to Combine Prior Art References*

Columbia also seeks to exclude Dr. Block's expert report on the ground that it is

unreliable because it fails to account for the motivation to combine prior references. Seirus must

demonstrate by clear and convincing evidence that a skilled artisan would have been motivated

to combine prior art references. *InTouch Techs.*, Inc., 751 F.3d at 1347. "While an analysis of

any teaching, suggestion, or motivation to combine elements from different prior art references is

useful in an obviousness analysis, the overall inquiry must be expansive and flexible." *Id.* (citing

*KSR*, 550 U.S. at 419). The Federal Circuit has made clear that it is within the trial court's

discretion to exclude "vague and conclusory obviousness testimony which did not offer any

motivation for one skilled in the art to combine the particular references he cites in order to

practice the claimed method." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 (Fed. Cir.

2008). "Such vague testimony would not have been helpful to a lay jury in avoiding the pitfalls

of hindsight that belie a determination of obviousness." *Id.* at 1373 (citing *Graham*, 383 U.S. at 36).

Here, Columbia relies heavily on *InTouch Techs* to argue that Dr. Block merely opined that a person of ordinary skill in the art *could* combine prior art references to achieve the claimed invention and not that they *would* be so motivated. Daubert Mot. at 17 (citing 751 F.3d at 1353). In *InTouch Techs*, the Federal Circuit reversed the trial court's denial of judgment as a matter of law that the disputed patent was valid. *Id.* The appellate court found that the expert's "testimony primarily consisted of conclusory references to her belief that one of ordinary skill in the art *could* combine these references, not that they *would* have been motivated to do so." *Id.* (emphasis added). While Dr. Block's testimony as to motivation does not constitute clear and convincing evidence of obviousness, neither is it conclusory to the point of warranting exclusion. Unlike *InTouch Techs* and other cases that Columbia relies on where the expert reports provide little or no explanation for obviousness combinations, Dr. Block's opinion does provide "some articulated reasoning with some rational underpinnings to support the legal conclusions of obviousness." *Innogentics, N.V.*, 512 F.3d at 1373 (citing *KSR*, 550 U.S. at 418). For example, when discussing the motivation to combine the coverage limitation with Hartmann, Dr. Block opined that:

> Such a modification is nothing more than using a known technique – providing heat direction – with a known device ready for improvement. And because Hartmann already provides the elements applied to the base material (substrate), but without specifying the specific percentage range of those elements as claimed, the design of Hartmann demands improvement.

Aldrich Daubert Decl. Ex. 36 at 3. In *InTouch Techs., Inc.*, by contrast, the expert's testimony was much more vague. 751 F.3d at 1351. The expert in that case testified that a prior art reference disclosed "doing things over the internet" and that because "robots are going over the

internet too" the prior art reference "applies to them as well." *Id.* In sum, the Court finds that Dr. Block's opinion provides the necessary "articulated reasoning with some rational underpinning" to survive Columbia's *Daubert* motion.

CONCLUSION

Columbia's Motion for Partial Summary Judgment of No Invalidity [108] is GRANTED in part. Specifically, summary judgment is granted that Rand '573, Rand '875, Harber, Kim, Blauer, Halley, Harmann, Worley, and Vaughn do not anticipate the Utility Patents. The Motion is DENIED regarding anticipation as to Fottinger and regarding obviousness. Additionally, Columbia's motion to strike is DENIED. Columbia's *Daubert* Motion [113] is also DENIED. Finally, Seirus's Motion for Partial Summary Judgment of Invalidity [110] is DENIED.

Dated this ____ day of _____, 2017.

_____
MARCO A. HERNÁNDEZ
United States District Judge